No. 87-535

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

STATE OF MONTANA,

Plaintiff and Appellant,

-vs-

J. C. E.,

Defendant and Respondent.

APPEAL FROM: District Court of the First Judicial District,
In and for the County of Lewis & Clark,
The Honorable Thomas Honzel, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Hon. Mike Greely, Attorney General, Helena, Montana
Dorothy McCarter argued, Asst. Atty. General, Helena
Mike McGrath, County Attorney, Helena, Montana
Carolyn A Clemens argued, Deputy County Atty.

For Respondent:

Gregory Jackson argued, Helena, Montana

Submitted: November 3, 1988

Decided: December 30, 1988

Filed:

_____
Clerk

Mr. Justice R. C. McDonough delivered the Opinion of the Court.

This appeal involves the admissibility of hearsay testimony regarding statements made by a child who allegedly is the victim of incest. In order to protect the child, and because the case is still in its preliminary stages, the individuals involved will be referred to by their initials. The State of Montana brings an interlocutory appeal from the order of the District Court of the First Judicial District, Lewis and Clark County, excluding testimony by a social worker and a counselor concerning S, the four-year-old daughter of the defendant. We affirm, and remand for further action.

The State frames a single issue on appeal: Did the District Court err in refusing to allow into evidence out-of-court statements made by the victim to her counselor, Margaret Stuart, and to social worker Rita Pickering?

The facts of this case are highly contested. Because the case has not reached the trial stage, the record does not yet allow for clear distinctions between allegations by the respective parties and provable fact. However, a chronology of relevant events is as follows.

S lives in Helena with her mother. The mother and J.C.E. are divorced, and custody of S has been disputed. In March of 1987, S was in Butte visiting J.C.E. She developed "spots," which prompted J.C.E. to take her to a doctor. She was diagnosed as having chicken pox and impetigo, and put on medication. The doctor described the location of the impetigo as the "right groin."

On March 30, 1987, approximately ten days after S saw the doctor in Butte, she returned to Helena. Her mother took her to see her local physician, Dr. R.E. Kechely. At Dr. Kechely's office, S removed her panties so the doctor could

2

examine the impetigo. S's mother noticed what appeared to be blood in the panties, and told Dr. Kechely this when he entered the examination room. He indicated initially that some of S's chicken pox may have become irritated and therefore bloody. He then performed his examination.

Dr. Kechely's record of S's visit contains the following notation:

> Examination showing a diffuse perineal [groin area] redness, and irritation almost to an abrasion point hymenal opening appearing intact. In discussing this with [S] she related a history of "Daddy puts his fingers in me."

After the examination, Dr. Kechely reported S's case to the Lewis and Clark County Human Services authorities and referred her to a gynecologist. A gynecological examination was performed later that day.

The next day, March 31, Rita Pickering of the Department of Family Services conducted a videotaped interview with S. During the interview, Pickering asked S whether J.C.E. had touched her genitals. Pickering obtained some responses from S indicating that J.C.E. had indeed touched her, and some responses denying any touching. In April of 1987, S began a series of counseling sessions with counselor Margaret Stuart.

On May 6, 1987, J.C.E. was charged by information with felony sexual assault. The information was amended approximately two months later to charge J.C.E. with incest as defined at § 45-5-507, MCA. On October 28, 1987, a hearing was held to videotape S's testimony for trial and to determine if she was competent to testify at trial. After the State finished its examination of S, counsel for J.C.E. moved to have S's testimony stricken on the ground that she was not competent to testify. The court agreed and granted the motion. The competency ruling has not been appealed.

3

The State's list of proposed witnesses included Dr. Kechely, Rita Pickering and Margaret Stuart, all of whom would testify regarding S's out-of-court statements about the alleged incest. Counsel for J.C.E. moved in limine to have the testimony of these witnesses excluded as inadmissible hearsay under Rule 802, M.R.Evid. The court denied the motion as to Kechely, but granted it as to Pickering and Stuart. The State appeals from that ruling.

The issue presented here goes to a very important and troubling consideration in the trial of alleged perpetrators of incest or other sexual abuse. The nature of these offenses poses evidentiary problems. Often, the only witnesses are the perpetrator and the victim. The victim of incest or abuse is often very young. The inability of a very young child to recall or relate information about the alleged offense accurately and consistently can result, as it has here, in the child being deemed incompetent as a witness.

If the child is found incompetent to testify, out-of-court statements made to relatives, medical personnel or social services personnel may become an important source of probative evidence. However, this is hearsay; the child cannot be cross-examined as to the truth of the statements. The absence of opportunity for cross-examination also raises possible problems regarding the Sixth Amendment to the United States Constitution and Sec. 24, Art. II of the Montana Constitution. The defendant loses the opportunity to confront a witness against him. The exceptions to the general rule against hearsay testimony have been developed as "substitutes" for the safeguards provided by cross-examination.

Traditional hearsay exceptions do not always fit well in cases where the hearsay declarant is a child victim of incest or abuse. Valuable evidence may be excluded by hearsay

strictures designed to protect against problems that may not exist with a child declarant. At the same time, the emotionally charged atmosphere of the case and the fact that the alleged perpetrator may be a parent might color the child's statements and the witnesses' perception of them. See, e.g., Comment, A Comprehensive Approach to Child Hearsay Statements in Sex Abuse Cases (1983), 83 Colum. L. Rev. 1745.

These factors have led us to analyze this case with special care. Rita Pickering and Margaret Stuart were told and shown things by S that could be claimed to be probative as to J.C.E.'s guilt or innocence. However, given J.C.E.'s inability to cross-examine S in court, the proffered testimony must be examined closely for the reliability that would make it admissible hearsay.

The State argued to the District Court that several hearsay exceptions applied to the testimony of Pickering and Stuart, and renews those arguments on appeal. The State asserts that the testimony of both witnesses is admissible under the so-called "residual" hearsay exceptions found in Rules 803(24) and 804(b)(5), M.R.Evid. In the case of Ms. Stuart, the State further argues for application of the exceptions found in Rule 702, M.R.Evid. (expert testimony), and Rule 803(4), M.R.Evid. (statements made for purposes of medical diagnosis and treatment).

I. Expert Testimony

Rule 702

Expert testimony involves a witness rendering an opinion using their superior knowledge of a subject not commonly understood by lay persons. The hearsay exception for expert testimony is found in Rule 702, M.R.Evid., and reads as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to

> understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

Whether a witness is qualified as an expert is largely within the discretion of the trial judge, who has wide latitude in determining the admissibility of proffered expert testimony. State v. Eiler (Mont. 1988), 762 P.2d 210, 218-19, 45 St.Rep. 1710, 1721.

According to the State's offer of proof to the District Court, Stuart would testify on four main points: (1) S has told her that incidents similar to the one alleged happen frequently with her father; (2) S can differentiate truth from fiction and has a good grasp of reality; (3) S shows no confusion about who assaulted her and (4) Stuart believes that S is telling a reliable, credible story. The State cited State v. Geyman (Mont. 1986), 729 P.2d 475, 43 St.Rep. 2125, to support its position. The District Court was correct in excluding this proffered expert testimony for two reasons.

First, the Geyman case dealt with the testimony of a clinical psychologist in a sexual assault case where the alleged victim had testified. This Court held such expert testimony admissible to assist the jury in assessing the credibility of the child's testimony. The District Court found Geyman inapplicable because S was not going to testify, and her credibility as a witness therefore would not be an issue.

This Court has previously held that as a general rule, testimony by an expert evaluating the credibility of a witness is inadmissible. State v. Brodniak (Mont. 1986), 718 P.2d 322, 43 St.Rep. 755. In Geyman, we adopted an exception to that rule for cases where the witness is a child victim of

6

sexual assault. Geyman, 729 P.2d at 579; see, State v. French (Mont. 1988), 760 P.2d 86, 45 St.Rep. 1557. The State's offer of proof indicated that Stuart would testify as to the credibility of S's statements. This would be improper under the general rule, and the exception established in Geyman does not apply because S will not testify.

Second, the State's offer of proof indicates that Stuart would identify the defendant as the perpetrator of the incest. Rule 702, M.R.Evid., states, "If ... specialized knowledge will assist the trier of fact to understand the evidence ...." While Rule 704, M.R.Evid., allows an expert witness to render an opinion on the ultimate issue in a case, that opinion is for the assistance of the jury. Only the jury can actually decide ultimate issues such as whether a crime was committed or the identity of the perpetrator. This question was squarely addressed in the context of child sexual assault by the Nevada Supreme Court in Townsend v. State (Nev. 1987), 734 P.2d 705, 708:

> Here the expert not only opined that the child had been sexually assaulted, but proceeded to identify Townsend as the perpetrator. This was improper testimony as it transcended the test of jury enlightenment and entered the realm of fact-finding that was well within the capacity of a lay jury.

The identity of the alleged perpetrator in this case is not a question requiring an expert opinion. Whether S was the victim of incest is a question that might be clarified by an expert opinion on her physical or mental state. However, whether the evidence adduced by the State establishes J.C.E. as the perpetrator requires only the common logic that is indeed well within the capacity of a lay jury.

Despite assertions made in the defendant's brief to this Court, it does not appear that the District Court excluded Stuart's testimony because she is not qualified as an expert.

could--depending on the foundation laid, subject matter, and discretion of the court--be offered as an expert and render an opinion based on her expertise as a counselor. The State could also offer her testimony relating statements made by S if the court determines that such testimony would come within the Rule 804(b)(5) residual exception discussed below. The fact remains, however, that Stuart is not licensed to render medical diagnoses, and therefore cannot testify about such diagnoses under this exception. Furthermore, the rationale behind the medical treatment exception is less forceful where a very young child is concerned. The child might not comprehend the necessity of telling a doctor the truth in order to aid diagnosis and treatment.

### III. Residual Exception
### Rule 804(b)(5)

The State's argument to this Court asserts that the residual hearsay exceptions found at Rule 803(24) and Rule 804(b)(5), M.R.Evid. should apply to testimony by Pickering and Stuart. The two exceptions are framed by exactly the same language:

> Other exceptions. A statement not specifically covered by any of the foregoing exceptions but having comparable circumstantial guarantees of trustworthiness.

The hearsay exceptions previously discussed are based in large part upon the status of the witness as an expert or a doctor. The status and function of these individuals lends trustworthiness to their testimony as to hearsay statements that cannot be cross-examined. The hearsay exceptions in Rules 803 and 804, including the residual exceptions, look to the circumstances surrounding a hearsay statement when it is made--the "circumstantial guarantees of trustworthiness" that

9

The testimony was excluded because it was offered on the irrelevant question of S's credibility. With sufficient foundation, Stuart could give opinion testimony consistent with her expertise as a counselor, as long as the requirements of Rule 702 were satisfied.

## II. Medical Diagnosis or Treatment
### Rule 803(4)

The State has sought to bring Stuart's testimony within the "medical treatment" exception under a two-part test found in State v. Robinson (Ariz. 1987), 735 P.2d 801, 809: (1) whether the declarant's motive was consistent with seeking medical treatment and (2) whether it was reasonable for the physician to rely on the information in diagnosis and treatment. The Arizona Supreme Court held in Robinson that a licensed psychologist treating a child for psychological problems resulting from sexual abuse was treating that child for "medical" purposes and admitted the psychologist's testimony under this exception.

The medical diagnosis and treatment exception is relatively new to Montana law. So far, its scope has not been expanded beyond testimony by medical doctors. See, e.g., Garza v. Peppard (Mont. 1986), 722 P.2d 610, 43 St.Rep. 1233. The psychologist in Robinson was licensed under Arizona law to "diagnose, treat and correct" human conditions. The Arizona court found this sufficiently similar to the work of a medical doctor to admit the psychologist's testimony under the medical treatment exception. The District Court in this case held that because Stuart is not a licensed psychologist, she does not have the authority to make the same type of diagnosis.

We decline to extend the medical diagnosis and treatment exception beyond medical doctors in this case, and we affirm the District Court's ruling on this issue. Stuart

8

lend reliability to the hearsay statement in lieu of cross-examination.

For example, the "excited utterance" exception found at Rule 803(2), M.R.Evid. requires that the statement be made "under the stress of excitement" caused by an event or condition. The rationale for this exception relies on

> the special reliability which is regarded as furnished by the excitement suspending the declarant's powers of reflection and fabrication.

McCormick on Evidence, § 297 at 855 (E. Cleary 3d ed. 1984). The problem noted at the outset of this opinion, however, is that traditional hearsay exceptions do not always serve their purpose when children are involved. Courts in some states have attempted to apply the excited utterance exception to cases of child sex abuse. See, e.g., Smith v. State (Md. 1969) 252 A.2d 277. A problem encountered with this exception is that fear, loyalty or lack of comprehension might cause a child to delay for weeks before reporting sexual abuse perpetrated by a parent or other close relative.

The residual exception argued by the State in this case has been relied upon by states such as South Dakota and Wisconsin for dealing with child hearsay. See, Bertrang v. State (Wis. 1971), 184 N.W.2d 867; State v. McCafferty, (S.D. 1984), 356 N.W.2d 159. The residual exception by its own terms is designed for use where established exceptions do not apply, which would seem to make it suited to child hearsay.

The residual exception also presents a problem, however, due to the lack of guidelines for a court to use in considering what constitutes a circumstantial guarantee of trustworthiness in an incest or sexual abuse case. See, Note, State v. McCafferty: The Conflict Between a Defendant's Right to Confrontation and the Need for Children's Hearsay Statements in Sexual Abuse Cases (1985), 30 S.D.L. Rev. 663.

An attempt to avoid the pitfalls of applying existing hearsay exceptions to children has been made in the State of Washington. In 1982, the Washington legislature enacted RCW 9A.44.120, which specifically declares child hearsay statements concerning sexual contact admissible as evidence in a criminal proceeding. However, the statute appears to have done little to alleviate the lack of guidelines encountered with the residual exception. In the first case where it interpreted the statute, the Washington Supreme Court felt compelled to give nine guidelines for its application. State v. Ryan (Wash. 1984), 691 P.2d 197.

Our review of cases from other jurisdictions indicates that special consideration must be given to proffered hearsay testimony when the child declarant is unavailable as a witness. Of the various approaches, the residual exception presents the fewest problems in its application to child hearsay. Nonetheless, it requires a set of guidelines for use in cases of this kind.

The State argues for application of the residual exception from either Rule 803 or Rule 804. However, Rule 803 deals with hearsay where the availability of the declarant is immaterial. The fact that S is unavailable as a witness is the very reason why hearsay testimony has become important to this case. Therefore, we hold that Rule 804(b)(5), M.R.Evid., shall henceforth be the rule under which proffered hearsay, other than expert testimony, is considered for admissibility in cases of incest or other sexual abuse of children when the alleged victim is unavailable as a witness.

Many of the guidelines set forth below for application of Rule 804(b)(5) have been implemented in other jurisdictions. They are not mandatory, and are presented only as considerations for a trial judge to bear in mind when

11

deciding the admissibility of proffered hearsay testimony. Some may not apply to a given case.

## IV. Child Hearsay Guidelines

Because the issue being addressed here arises only when a child hearsay declarant is unavailable as a witness, preliminary findings concerning the child's availability must be made by the District Court before hearsay testimony can be considered under Rule 804(b)(5):

> 1. The victim must be unavailable as a witness, whether through incompetency, illness, or some other like reason (e.g., trauma induced by the courtroom setting).
>
> 2. The proffered hearsay must be evidence of a material fact, and must be more probative than any other evidence available through reasonable means.
>
> 3. The party intending to offer the hearsay testimony must give advance notice of that intention.

Once the court has found these conditions to be present, Rule 804(b)(5) can be applied to any proffered hearsay testimony. The guidelines that follow are presented in groups corresponding to the main components of such testimony:

> 1. <u>The Attributes of the Child Hearsay Declarant.</u>
>
> a. The child's age.
>
> b. The child's ability to communicate verbally.
>
> c. The child's ability to comprehend the statements or questions of others.
>
> d. The child's ability to tell the difference between truth and falsehood.
>
> e. The child's motivation to tell the truth (i.e., whether the child understands the general obligation to speak truthfully and not fabricate stories).

12

f. Whether the child possessed sufficient mental capacity at the time of the alleged incident to receive an accurate impression of it.

g. Whether the child possesses sufficient memory to retain an independent recollection of the events at issue.

2.    The Witness Relating the Hearsay Statement.

a. The witness's relationship to the child.

b. Whether the relationship between the witness and the child might have an impact on the trustworthiness of the hearsay statement.

c. Whether the witness might have a motive to fabricate or distort the child's statement.

d. The circumstances under which the witness heard the child's statement, including the timing of the statement in relation to the incident at issue and the availability of another person in whom the child could confide.

3.    The Statement Itself.

a. Whether it contains knowledge not normally attributed to a child of the declarant's age.

b. Whether it was volunteered spontaneously.

c. The suggestiveness of prior statements by the witness relating the statement or third parties present when the statement was made.

d. If statements were made by the child to more than one person, whether those statements were consistent.

e. Its nearness in time to the incident at issue.

4.    The Availability of Corroborative Evidence.

a. Whether the act alleged can be corroborated.

13

b. If the child's statement identifies a perpetrator, whether that identity can be corroborated.

c. Such corroboration can come from direct, physical evidence, or more circumstantial evidence of motive or opportunity.

5. Other Considerations.

The particular facts of a case may present the court with considerations other than those outlined above that in the court's judgment will bear on the admissibility of the proffered testimony.

We must emphasize that in utilizing these guidelines, the admissibility of evidence remains in the discretion of the trial judge. Where a court is determining circumstantial guarantees of trustworthiness, we will defer to the court's decision unless an abuse of discretion is clearly shown. State v. LaPier (1984), 208 Mont. 106, 676 P.2d 210. In order for this Court to conduct proper review of decisions under Rule 804(b)(5), a trial judge's determination utilizing these considerations must be reduced to writing. Therefore, a District Court ruling on the admissibility of child hearsay under Rule 804(b)(5), M.R.Evid., shall issue findings of fact and conclusions of law setting forth its decision.

We affirm the District Court's decision as to the admissibility of the State's proffered testimony under the exceptions for expert testimony and medical treatment. We remand the case to the District Court for entry of findings of fact and conclusions of law as to the applicability of Rule 804(b)(5), M.R.Evid., to testimony by Pickering or Stuart relating statements made by S, and for further proceedings.

Affirmed and remanded.

_____
Justice

14

We Concur:

_J. A. Turnage_
Chief Justice

_John Conway Harrison_

_____

_L. C. Gulbrandson_

_William E. Hunt, Sr._
Justices

_Dale Cox_
District Judge Dale Cox
sitting for Justice John C.
Sheehy