# STATE OF MONTANA,
## Plaintiff and Respondent,
### v.
# JAMES CHRISTOPHER OSBORNE,
## Defendant and Appellant.

No. 97-534.
Submitted on Briefs November 19, 1998.
Decided June 29, 1999.
1999 MT 149.
56 St.Rep. 589.
295 Mont. 54.
982 P.2d 1045.

For Appellant: **Carl White**, Attorney at Law; Havre.

For Respondent: **Hon. Joseph P. Mazurek**, Attorney General; **Mark W. Mattioli**, Assistant Attorney General; Helena; **Allin Cheetham**, Chouteau County Attorney; Fort Benton.

JUSTICE TRIEWEILER delivered the opinion of the Court.

¶1    By information filed in the District Court for the Twelfth Judicial District in Choteau County, the defendant, James Christopher Osborne was charged with sexual intercourse without consent, a violation of § 45-5-503(3)(a), MCA. Following trial by jury, Osborne was convicted. He appeals from this conviction. We affirm the judgment of the District Court.

¶2    The issues presented are:

¶3    1. Did the District Court err when it denied Osborne's motion to exclude the victim's out-of-court statements?

¶4   2. Did the District Court err when it denied Osborne's request to exclude a material witness from the courtroom during the presentation of other testimony?

¶5   3. Did the District Court err when it denied Osborne's motion to dismiss for lack of sufficient evidence?

¶6   4. Did the District Court err when it instructed the jury to consider evidence that corroborated the hearsay statements?

## FACTUAL BACKGROUND

¶7   In October 1996, Knute Heen became suspicious that his thirty-three-month-old granddaughter, Cassie Heen, had been sexually abused by her stepfather, Heen's son-in-law, James Osborne. Heen reported his suspicions to Cassie's mother, Jamie Osborne. Heen and Jamie separately questioned Cassie about her interaction with Osborne. Following these conversations, Heen reported his suspicions to the child abuse hotline and to the Choteau County Sheriff. A subsequent medical examination confirmed that Cassie had physical injuries consistent with sexual abuse, but the examiner was unable to find any evidence with which to identify a perpetrator.

¶8   Cassie was interviewed by a Choteau County Sheriff's deputy and a social worker. She made no statements implicating Osborne, but made statements which appeared to implicate Heen.

¶9   Osborne was arrested and charged with sexual intercourse without consent. At trial, the State presented testimony from Heen and Jamie which related Cassie's out-of-court statements implicating her father. The District Court had previously concluded that Cassie was not competent to testify at trial.

¶10   Following trial, the jury convicted Osborne of sexual intercourse without consent. Osborne appeals to this Court. Additional facts will be provided where pertinent to our discussion.

## ISSUE 1

¶11   Did the District Court err when it denied Osborne's motion to exclude the victim's out-of-court statements?

¶12   Heen and Jamie separately questioned Cassie in an effort to determine whether she had been sexually abused. Heen's testimony about his conversations with Cassie established that she told Heen that she had "played with Daddy's rubber duck;" that she told Heen that she wanted Osborne to stay at home or ride in a separate vehicle while she and Heen traveled to Havre to pick up her mother and brother; that Cassie told Heen her father had a green rubber duck;

and that when Heen asked Cassie where daddy's rubber duck was, she made a motion that Heen interpreted to indicate Osborne's genitalia.

¶13    Jamie's testimony established that Cassie had answered "yes" when asked if Osborne had a rubber ducky; that Cassie had answered "yes" when asked if Osborne's "rubber ducky" was his "peepee;" and that when asked where on her own body Osborne's rubber ducky would be, Cassie said, "in my peepee."

¶14   We review a district court's evidentiary rulings for an abuse of discretion. The district court has broad discretion to determine whether evidence is relevant and admissible. Absent a showing of an abuse of discretion, the trial court's determination will not be overturned. *See State v. Passama* (1993), 261 Mont. 338, 341, 863 P.2d 378, 380.

¶15   The State gave notice of its intention to use hearsay at trial and the District Court admitted the testimony pursuant to the residual hearsay exception found at Rule 804, M.R.Evid., which provides in pertinent part:

Rule 804. Hearsay exceptions: declarant unavailable

(a) Definition of unavailability. Unavailability as a witness includes situations in which the declarant:

....

(4) is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity;

....

(b) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

....

(5) Other exceptions. A statement not specifically covered by any of the foregoing exceptions but having comparable circumstantial guarantees of trustworthiness.

¶16     ■   Before Rule 804(b)(5) hearsay may be admitted, the proponent must show that the declarant is unavailable to testify, and that the statements bear comparable circumstantial guarantees of trustworthiness equivalent to the other enumerated exceptions to the hearsay rule. In *State v. J.C.E.* (1988), 235 Mont. 264, 273, 767 P.2d 309, 315, this Court addressed the admissibility of a young child's hearsay testimony:

Preliminary findings concerning the child's availability must be made by the District Court before hearsay testimony can be considered under Rule 804(b)(5):

1. The victim must be unavailable as a witness, whether through incompetency, illness, or some other like reason (e.g., trauma induced by the courtroom setting).

2. The proffered hearsay must be evidence of a material fact, and must be more probative than any other evidence available through reasonable means.

3. The party intending to offer the hearsay testimony must give advance notice of that intention.

¶17 The State gave written notice of its intent to rely on hearsay testimony six days prior to trial. Osborne contends that this notice was untimely, that he did not interview Heen or Jamie prior to trial because once the notice was provided, he had no meaningful time to prepare, and that consequently he did not know what Heen or Jamie would testify to at trial. However, Heen and Jamie were both listed as witnesses by the State and the affidavit for leave to file the information in this case contained a description of Cassie's statements to them. Moreover, Osborne conceded at the time of his objection that he was not surprised by the State's intention to rely on hearsay. Therefore, without reaching the merits of whether the State's notice was untimely, we conclude that based on these specific facts, the District Court was not required to exclude the evidence based on lack of, or inadequate, notice.

¶18 Prior to the introduction of Cassie's statements through Heen or Jamie, the District Court conducted a hearing outside the presence of the jury at which it attempted, unsuccessfully, to elicit answers from Cassie to simple questions such as her name and her age. The District Court found that Cassie was extremely shy, possibly intimidated by the courtroom, and unwilling to speak, whereupon it concluded that she was "not, at present, a competent witness under the rules of the State of Montana." For purposes of appeal, Osborne does not argue that Cassie was available as a witness.

¶19 Osborne concedes that the hearsay testimony concerned evidence of a material fact, the identity of the rapist, but contends that it was not more probative than any other evidence available through reasonable means. He offers, as an alternative, the deputy's testimony that Cassie told them about "Papa's rubber ducky." Heen testified that Cassie referred to Heen as "Papa" and Osborne as "Daddy." Osborne argues that the State's failure to follow up on the statements implicating Heen destroyed more probative evidence of the identity of Cassie's attacker, and that the State should not be able to take advan-

tage of its own error by using less probative evidence which identifies Osborne.

¶20    There was no evidence, other than the hearsay evidence, implicating Osborne. Therefore it was evidence of a material fact, more probative than any other evidence available through reasonable means. However, the material fact that the State sought to prove through the hearsay evidence was not simply the identity of the rapist, it was that Cassie identified Osborne as the rapist. The fact that she may have identified Heen to the deputy and the social worker is evidence of a different fact, and does not constitute more probative evidence of the *same* material fact. Accordingly, we conclude that the hearsay evidence of Cassie's statements to Heen and Jamie addressed a material fact and was more probative than any other evidence available through reasonable means. We further conclude that the District Court made adequate preliminary inquiry before it admitted the hearsay statements.

¶21    ▉ Even though admissible pursuant to Rule 804(b)(5), incriminating statements may be inadmissible because they violate the defendant's confrontation clause rights. *See Idaho v. Wright* (1990), 497 U.S. 805, 814, 110 S.Ct. 3139, 3146, 111 L.Ed.2d 638, 651. The firmly rooted exceptions to hearsay bear adequate indicia of reliability in and of themselves; however, residual clause exceptions such as child hearsay, are not firmly rooted exceptions and therefore they require a showing of particularized guarantees of trustworthiness. *See Wright*, 497 U.S. at 815, 110 S.Ct. at 3146, 111 L.Ed.2d at 652. It is the proponent's burden to show that the declarant was unavailable and that the hearsay evidence it seeks to introduce bears sufficient indicia of reliability to withstand Confrontation Clause scrutiny. *See Wright*, 497 U.S. at 816, 110 S.Ct. at 3147, 111 L.Ed.2d at 653.

¶22    The United States Supreme Court in *Wright* declined to endorse a "mechanical test" for determining particularized guarantees of trustworthiness, *see Wright*, 497 U.S. at 822, 110 S.Ct. at 3150, 111 L.Ed.2d at 656, instead holding that an examination of the totality of the circumstances surrounding the making of the statement was the better reasoned approach. "In other words, if the declarant's truthfulness is so clear from the surrounding circumstances that the test of cross-examination would be of marginal utility, then the hearsay rule does not bar admission of the statement at trial." *Wright*, 497 U.S. at 819-20, 110 S.Ct. at 3148-49, 111 L.Ed.2d at 655. Moreover, the Court concluded that corroborating evidence is not a basis for presuming

the declarant to be trustworthy, and medical evidence of abuse sheds no light on the reliability of the child's allegations regarding the identity of the abuser. *See Wright*, 497 U.S. at 824, 110 S.Ct. at 3151, 111 L.Ed.2d at 658.

¶23    This Court has previously set forth extensive guidelines for a district court to consider when it examines proffered child hearsay for particularized guarantees of trustworthiness. These guidelines broadly included attributes of the declarant, attributes of the testifying witness, and attributes of the statement itself. *See J.C.E.*, 235 Mont. at 274, 767 P.2d at 315-16. However, we also emphasized that notwithstanding the guidelines, the admissibility of evidence remains in the discretion of the trial judge; that the particular facts of a case may present the court with considerations other than those outlined, and that we would "defer to the [district] court's discretion unless an abuse of discretion is clearly shown." *J.C.E.*, 235 Mont. at 274, 767 P.2d at 316. Based on the United States Supreme Court's holding in *Wright* and our prior language in *J.C.E.*, we conclude that the particularized guarantees of trustworthiness necessary to satisfy the reliability requirement, both for purposes of admissibility and of the Sixth Amendment right of the accused to confront witnesses, must be drawn from the totality of the circumstances particular to the facts of the case. Further, we will not disturb the trial court's conclusion absent a clearly shown abuse of discretion.

¶24    In addition to examining the child, the District Court found that Heen's suspicions "were raised by an unsolicited statement by a child who could make such a statement, and communicate it to someone who was capable of doing that under circumstances which such a statement would not ordinarily be made." The Court further found that there was no evidence that Heen was attempting to determine, through his questioning of the child, whether or not it was Osborne whom Cassie would identify. It also pointed out that Osborne would be able to cross-examine Heen on this point. The Court concluded that the totality of the circumstances, "considering all the factors," rendered the hearsay trustworthy and it specifically stated that it did not consider the medical evidence.

¶25    Osborne contends that the District Court did not properly consider the factors enumerated in *J.C.E.* or factors which were considered in other cases; however, as we have stated, the District Court was required to consider the totality of the circumstances present in this case and to conclude therefrom whether particularized guarantees of trustworthiness rendered the statement reliable and cross-examination of marginal utility. From the record before this

Court, we conclude that Osborne has not shown that the District Court abused its discretion when it concluded that such guarantees were present, given the totality of the circumstances.

## ISSUE 2

¶26 Did the District Court err when it denied Osborne's request to exclude a material witness from the courtroom during the presentation of other testimony?

¶27 The record shows three separate occasions on which Osborne requested that witnesses be excluded from the courtroom. Twice the District Court ordered that all witnesses be excluded. On a third occasion, Osborne objected to Deputy Owen's continued presence in the courtroom in violation of the Court's order. The Court concluded that "at this late stage" there was no point to excluding Deputy Owen.

¶28 Rule 615, M.R.Evid., provides that "[a]t the request of a party, the court *shall* order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion." (Emphasis added.) The rule is not permissive; it mandates that witnesses be excluded. Prior to this Court's adoption of the Montana Rules of Evidence in 1977, the statute which provided for the exclusion of witnesses was permissive and, therefore, several of our prior decisions review the trial court's decision to exclude witnesses for an abuse of discretion. Because the current Rule 615, M.R.Evid., is not permissive, we will review a district court's application of the rule as we would a conclusion of law. We review a district court's conclusions of law for correctness. *See Carbon County v. Union Reserve Coal Co.* (1995), 271 Mont. 459, 469, 898 P.2d 680, 686.

¶29 There is an exception to Rule 615, M.R.Evid., which provides that "an officer or employee of a party which is not a natural person designated as its representative by its attorney" may remain. The State argues on appeal that this exception permitted Owen to remain in the courtroom; however, the County Attorney did not designate Owen as the State's representative at trial and the District Court did not recognize Owen as such a representative at any time. Moreover, Owen was called as a witness by the defense, not the State.

¶30 ▮ We conclude that the District Court erred when it allowed a witness to remain in the courtroom after a request from one of the parties that witnesses be excluded. However, we further conclude that the error was harmless, because Osborne failed to demonstrate that his defense was prejudiced by the error.

¶31 Osborne contends that he was prejudiced by being unable to effectively cross-examine Owen because Owen had the opportunity to hear the testimony of the other witnesses. Specifically, he contends that Owen had the opportunity to learn for the first time during Heen's testimony that Cassie referred to Heen, rather than Osborne, as "Papa." This knowledge, Osborne argues, enabled Owen to successfully withstand cross-examination about Cassie's identification of her attacker.

¶32 The State contends that the error was not prejudicial because Heen testified to being called "Papa" prior to the point at which Osborne brought Owen's presence in the courtroom in violation of the court order, to the Court's attention.

¶33 Owen testified that Cassie referred to Heen as "Papa," and that she used the words "Papa's rubber duck." However, Owen also acknowledged that Cassie had not indicated to him that Osborne did anything to her. He further testified that Cassie told him "Daddy is yucky," and that she told him that Heen had a "rubber duck." From this testimony and the remainder of the record we are unable to conclude that Osborne was prejudiced by Owen's knowledge that Heen was "Papa." Accordingly, we hold that Osborne was not prejudiced by the District Court's error.

## ISSUE 3

¶34 Did the District Court err when it denied Osborne's motion to dismiss for lack of sufficient evidence?

¶35 It is within the sound discretion of the district court whether to dismiss an action at the close of the State's case for insufficient evidence and we will not disturb the district court's ruling unless the appellant shows an abuse of discretion. *See* § 46-16-403, MCA; *State v. Miller* (1988), 231 Mont. 497, 509, 757 P.2d 1275, 1282. We have held that a motion to dismiss for insufficient evidence "should be granted only where there is no evidence upon which a trier of fact could base a verdict." *Miller*, 231 Mont. at 509, 757 P.2d at 1282 (citations omitted). This Court reviews the sufficiency of the evidence to determine whether, upon viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Miller*, 231 Mont. at 509, 757 P.2d at 1283.

¶36 Osborne was convicted of sexual intercourse without consent, a violation of § 45-5-503(3)(a), MCA:

(1) A person who knowingly has sexual intercourse without consent with another person commits the offense of sexual intercourse without consent.

....

(3) (a) If the victim is less than 16 years old and the offender is 3 or more years older than the victim or if the offender inflicts bodily injury upon anyone in the course of committing sexual intercourse without consent, the offender shall be punished by life imprisonment or by imprisonment in the state prison for a term of not less than 4 years or more than 100 years and may be fined not more than $50,000, except as provided in 46-18-219 and 46-18-222.

¶37    On appeal, Osborne contends that the State failed to identify him as the perpetrator. He contends that the only evidence which showed that Cassie understood what a penis was, and that a "rubber ducky" was her euphemism for penis, was Heen's assumption. He argues that Cassie could have been penetrated by something owned by Osborne and manipulated by someone else.

¶38    Sexual intercourse is defined pursuant to § 45-2-101(61), MCA, as:

[The] penetration of the vulva, anus, or mouth of one person by the penis of another person, penetration of the vulva or anus of one person by any body member of another person, or penetration of the vulva or anus of one person by any foreign instrument or object manipulated by another person for the purpose of arousing or gratifying the sexual desire of either party.

¶39    ■ When the evidence is viewed in the light most favorable to the State, we hold that a rational trier of fact could have concluded beyond a reasonable doubt that Osborne was the perpetrator of the offense with which he was charged. While there is no direct, physical evidence which links him to the crime, the jury could have reasonably concluded from the evidence that Cassie identified Osborne as the person who penetrated her in light of the following evidence: Cassie's statements about "daddy's rubber ducky" being "in my peepee"; Heen's testimony that Cassie appeared to identify genitalia as a "rubber ducky"; Cassie's statements that Osborne was "yucky"; and, testimony about Cassie's apparent fear of being in Osborne's presence. Moreover, whether Osborne penetrated Cassie with his penis or with a foreign instrument is of no consequence for purposes of the offense. *See* § 45-2-101(66), MCA.

## ISSUE 4

¶40    Did the District Court err when it instructed the jury to consider evidence that corroborated the hearsay statements?

¶41    This Court reviews jury instructions to determine whether the instructions, read as a whole, fully and fairly instruct the jury on the

applicable law. *See State v. Houle*, 1998 MT 235, ¶ 18, 291 Mont. 95, ¶ 18, 966 P.2d 147, ¶ 18; *State v. Patton* (1996) 280 Mont. 278, 286, 930 P.2d 635, 639.

¶42   On its own initiative, the District Court prepared an instruction for the jury which instructed them regarding the reliability of child hearsay. The instruction provided the jury with the child hearsay admissibility guidelines from *J.C.E.*; including instructing them to consider "whether there is any corroboration for the statements," and "if the statement identifies a perpetrator, whether such identification can be corroborated."

¶43   Osborne contends that the instruction was error because it violated the United States Supreme Court holding in *Wright*, that "corroboration of a child's allegations of sexual abuse by medical evidence of abuse" should not be considered when assessing the reliability of the statements. The State contends that the instruction was proper because the medical evidence statements in *Wright* were dicta. It further argues that *Wright* applies only to the determination by the trial court of the admissibility of hearsay statements, not to whether the jury is entitled to consider corroborative evidence. We disagree that the medical evidence language in *Wright* was mere dicta. The Court held, and we concur, that medical evidence of abuse which does not identify the abuser should not be considered by the district court when it assesses the admissibility of the hearsay statements. However, we agree with the State that *Wright* applies only to the initial admissibility of the hearsay statements. *See Wright*, 497 U.S. at 826, 110 S.Ct. at 3152, 111 L.Ed.2d at 659.

¶44   ■ Moreover, the instruction given differentiated between evidence which corroborates the occurrence of an act, and evidence corroborating that Osborne was the perpetrator. The medical examiner testified at trial that it was impossible to identify the perpetrator from the medical evidence. Therefore, within the context of the instructions read as a whole, we conclude that the instruction did not allow the jury to "bootstrap" the medical evidence onto Cassie's identification of Osborne, and we conclude that the District Court did not abuse its discretion by the manner in which it instructed the jury.

¶45   We affirm the judgment of the District Court.

CHIEF JUSTICE TURNAGE, JUSTICES HUNT, NELSON and LEAPHART concur.