No. 02-315

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 221

STATE OF MONTANA,

       Plaintiffs and Respondents,

   v.

S.T.M.,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Nineteenth Judicial District,
In and for the County of Lincoln, Cause No. DC-01-27
The Honorable Michael C. Prezeau, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

      Scott B. Spencer, Libby, Montana

      For Respondent:

      Mike McGrath, Montana Attorney General, Tammy K. Plubell, Assistant
Montana Attorney General, Helena, Montana; Bernard G. Cassidy, Lincoln
County Attorney, Libby, Montana

Submitted on Briefs:  December 13, 2002

Decided:  August 25, 2003

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1    S.T.M. was charged with incest--along with other related offenses--in the Nineteenth Judicial District Court. The State's primary witness was K.M., the defendant's toddler daughter, against whom he allegedly committed the offense. Because the young girl was not competent to testify, the State sought to have her hearsay statements admitted into evidence. The District Court conducted a hearing on the issue and held that K.M.'s statements were admissible under the residual exception to the hearsay rule. S.T.M. appeals. We affirm.

## ISSUES

¶2    We restate the issues S.T.M. presents for review as follows:

1. Did the District Court abuse its discretion when it determined K.M.'s hearsay statements were admissible?

2. Should the District Court have excluded K.M.'s hearsay statements as a violation of the right of confrontation, guaranteed by the Sixth Amendment?

## FACTUAL AND PROCEDURAL BACKGROUND

¶3    On July 11, 2001, the State of Montana filed an Information charging S.T.M. with one felony count of incest, in violation of § 45-5-507, MCA. Alternatively, S.T.M. was charged with sexual assault, a felony, and surreptitious visual observation, a misdemeanor, in violation of §§ 45-5-502 and -223, MCA, respectively. The charges stem from allegations that S.T.M. licked the vagina of K.M., his 35-month-old daughter, while he was putting her to bed one evening.

¶4    K.M. was the State's primary witness. S.T.M. challenged her competency to testify,

and the State conceded that she was not competent to testify due to her age. However, the State sought to have K.M.'s hearsay statements--made to her mother and to a social worker–admitted into evidence under Rule 804(b)(5), M.R.Evid., which provides a residual exception to the hearsay rule. S.T.M. filed a motion in limine to exclude the hearsay statements. On September 28, 2001, the District Court conducted a hearing on the issue and determined that K.M.'s statements were admissible.

¶5 Thereafter, S.T.M. pled guilty to sexual assault, reserving the right to appeal the District Court's evidentiary ruling. Upon his guilty plea, the District Court sentenced S.T.M. to ten years in Montana State Prison, but suspended the term of incarceration on a lengthy set of conditions.

¶6 S.T.M. married M.M. when she was fifteen years old and he was approximately twenty-five. The couple has two children: K.M. is now five years old and L.M. is three years old. On or about June 5, 2001, M.M. noticed a rash while changing K.M.'s diaper. M.M. has testified that the she had the following conversation with her daughter after she noticed the rash:

> Mother: Oh, that looks bad. Does it hurt?
>
> K.M.: Yeah, don't lick it.
>
> Mother: Lick it, who did?
>
> K.M.: Daddy did.

Upon hearing this, M.M. immediately went to the living room to confront her husband. M.M. told him what K.M. had just said and asked if it were true. S.T.M. allegedly admitted

3

something to effect: "I really didn't do much. I just started to and I quit." S.T.M. gave conflicting accounts of when the incident took place, once claiming it was about a month earlier and later saying it happened just a few days before.

¶7 M.M. also testified that later the same evening, she asked her daughter, "Did Daddy do something to you?" and K.M. replied, "Yeah, he licked my bottom."

¶8 During this same period of time, S.T.M. and M.M. were in counseling with Mike and Judy Cleveland. The Clevelands, based in Ohio, offered a ministry to help people with sexual addiction problems. M.M. testified that she learned about the Clevelands' ministry through the Internet and sought their help to deal with S.T.M.'s addiction to pornography. Counseling sessions were conducted by phone.

¶9 During a counseling session, S.T.M. disclosed to the Clevelands that he had licked K.M.'s vagina. Mike Cleveland alerted law enforcement authorities in Montana that S.T.M. may have abused his minor daughter. M.M. also later reported the incident to authorities. As a result, on June 26, 2001, Linda Meloan from the Lincoln County Child Protective Services interviewed K.M. Detective Steve Hurtig watched the interview from outside the room. The interview was taped and was viewed by the District Court during the evidentiary hearing.

¶10 At the time of the interview, K.M. was just over three weeks away from her third birthday. She was extremely shy and reticent during the interview. K.M. clung to her mother throughout and was reluctant to talk to Meloan. Most of her answers were a single word, most often "No." In one way or another, Meloan asked K.M. approximately a dozen

4

times whether her Daddy had "done anything" to her, touched her, kissed her, licked her, or hugged her. K.M. either didn't answer or said "No" to each question. At that point, however, the following exchange took place:

Meloan: Hey, K.M., has anybody ever licked you?

K.M.: Daddy.

Meloan: Daddy licked you? Where did he lick you?

K.M.: In the bed.

Meloan: On the bed? You was on the . . .

K.M.: On my bed.

Meloan: On your bed. You was on your bed?

K.M.: Yeah.

Meloan: Alright. And what part of your body did Daddy lick?

K.M.: (Points to crotch area.)

Meloan: Right down there?

K.M.: Uh-huh (positive).

¶11 After the conclusion of the interview, Detective Hurtig visited S.T.M.'s workplace and questioned him about K.M.'s allegations. S.T.M. admitted he had licked his daughter on her vagina. He also admitted several other sexual incidents, involving his wife's younger sisters, and his own sisters. S.T.M. was subsequently charged with incest.

¶12 K.M. did not appear at the evidentiary hearing, but both sides agreed that she was not competent to testify. M.M. testified that K.M. would not respond to questions on the witness

5

stand. She said that K.M. is talkative around her, but very shy around strangers. M.M. testified that K.M. has a good memory, but doesn't always know the difference between the truth and a lie.

## STANDARDS OF REVIEW

¶13 S.T.M.'s first challenge is to the admission of K.M.'s hearsay statement under Rule 804(5), M.R.Evid., which provides a residual exception to the hearsay rule. We review a district court's evidentiary rulings for an abuse of discretion. The district court has broad discretion to determine whether evidence is relevant and admissible. Absent a showing of abuse of discretion, the trial court's determination will not be overturned. *State v. Osborne*, 1999 MT 149, ¶ 14, 295 Mont. 54, ¶ 14, 982 P.2d 1045, ¶ 14.

¶14 In utilizing the guidelines outlined in *State v. J.C.E.* (1988), 235 Mont. 264, 767 P.2d 309, as the District Court did here, the admissibility of evidence remains in the discretion of the trial judge. Where a court is determining circumstantial guarantees of trustworthiness, we will defer to the court's decision unless an abuse of discretion is clearly shown. *J.C.E.*, 235 Mont. at 275, 767 P.2d at 316 (citing *State v. LaPier* (1984), 208 Mont. 106, 676 P.2d 210).

¶15 S.T.M.'s second contention is that the admission of K.M.'s hearsay statements violates the Confrontation Clause of the Sixth Amendment to the U.S. Constitution. We review a district court's conclusions of law *de novo*, to determine whether those conclusions are correct. *Kottel v. State*, 2002 MT 278, ¶ 8, 312 Mont. 387, ¶ 8, 60 P.3d 403, ¶ 8. Further, we will affirm the District Court's ruling, even if the court reached the correct result for the

6

wrong reason. *Kottel*, ¶ 8, (citing *Eschenbacher v. Anderson*, 2001 MT 206, ¶ 40, 306 Mont. 321, ¶ 40, 34 P.3d 87, ¶ 40).

## DISCUSSION

¶16 **Did the District Court abuse its discretion when it determined K.M.'s hearsay statements were admissible?**

¶17 The District Court ruled K.M.'s hearsay statements admissible pursuant to Rule 804(b)(5), M.R.Evid, which provides a residual exception to the rule against hearsay. The exception permits the admission of out-of-court statements, which would otherwise be excluded as hearsay, if the statements have "comparable circumstantial guarantees of trustworthiness" to the enumerated exceptions to the hearsay rule.

¶18 In *J.C.E.*, we established a framework to guide district courts in determinations about the admissibility of hearsay testimony from young child victims in sexual assault cases. Before hearsay testimony can be considered under Rule 804(b)(5), we held the district court must make the following preliminary findings:

> 1. The victim must be unavailable to testify, whether through incompetency, illness, or some other like reason (e.g., trauma induced by the courtroom setting);
>
> 2. The proffered hearsay must be evidence of a material fact, and must be more probative than any other evidence available through reasonable means; and
>
> 3. The party intending to offer the hearsay testimony must give advance notice of that intention.

*J.C.E.*, 235 Mont. at 273, 767 P.2d at 315.

¶19 Here, the parties agreed that K.M. was not competent to testify. K.M. was the only

witness to the alleged crime, other than S.T.M. As the alleged crime left no physical evidence, her hearsay was the most probative of the available evidence. Finally, the State provided adequate notice of its intention to offer K.M.'s hearsay testimony.

¶20 Having appropriately determined that those threshold elements were satisfied, the District Court proceeded to carefully and thoroughly apply the guidelines laid out in *J.C.E.* to evaluate the admissibility of hearsay statements from child victims. It is important for this analysis to quote extensively from the conclusions of law, in which the District Court applied the *J.C.E.* framework to the facts of this case:

> 1. The Attributes of the Child Hearsay Declarant
>
>> a. The child's age: K.M. was almost three years old when she made the initial statement to her mother.
>>
>> b. The child's ability to communicate verbally: K.M.'s ability to communicate was probably appropriate for her age, but certainly marginal in the scheme of things.
>>
>> c. The child's ability to comprehend the statements or questions of others: Again, age appropriate, but marginal compared to a typical competent witness.
>>
>> d. The child's ability to tell the difference between truth and falsehood: Probably age appropriate, but according to her mother, K.M. is unable to consistently differentiate between fact and fiction.
>>
>> e. The child's motivation to tell the truth (i.e., whether the child understands the general obligation to speak truthfully and not fabricate stories): There is no reason to believe that K.M. does not love her father or that she would want him to get in trouble.
>>
>> f. Whether the child possessed sufficient mental capacity at the time of the alleged incident to receive an accurate impression of

8

it: K.M. apparently received an accurate impression of what had happened to her, as evidenced by the fact that the Defendant allegedly admitted doing what K.M. reported.

g. Whether the child possesses sufficient memory to retain an independent recollection of the events at issue: K.M. repeated the allegation three weeks after first telling her mother.

2. The Witness Relating the Hearsay Statement.

a. The witness's relationship to the child: The witnesses who would testify about their conversations with K.M. are her mother and a social worker previously unknown to K.M. There is also a videotape of K.M.'s conversation with the social worker, so, in essence, the jury would be able to assess K.M.'s credibility for itself.

b. Whether the relationship between the witness and the child might have an impact on the trustworthiness of the hearsay statement: This seems unlikely.

c. Whether the witness might have a motive to fabricate or distort the child's statement: No, M.M. seems ambivalent, at best, about the prosecution of her husband.

d. The circumstances under which the witness heard the child's statement, including the timing of the statement in relation to the incident at issue and the availability of another person in whom the child could confide: The first statement was made within a month of the crime, probably much closer in time given the continued presence of the rash. From the Court's observations, M.M. is probably the only person to whom K.M. would have volunteered this information.

3. The Statement Itself.

a. Whether the statement contains knowledge not normally attributed to a child of the declarant's age: It is unknown whether a child of K.M.'s age would typically be able to conceive of having her private parts licked. It seems unlikely.

9

b. <u>Whether it was volunteered spontaneously</u>: The initial statement to M.M. was volunteered. The second statement on the evening of the initial volunteered statement was in response to a question. The final statement to Meloan followed repeated questions.

c. <u>The suggestiveness of prior statements by the witness relating the statement or third parties present when the statement was made</u>: Prior to the statement to Meloan, there were certainly a number of suggestions made as to the answer being sought. That is not the case with the first statements to M.M.

d. <u>If statements were made by the child to more than one person, whether those statements were consistent</u>: The statements were not detailed, but they were consistent.

e. <u>Its nearness in time to the incident at issue</u>: Unknown, but the first statement was probably made within days. The statement to Meloan was three weeks after the first statement and as long as six weeks or more after the crime.

4. The Availability of Corroborative Evidence.

a. <u>Whether the act alleged can be corroborated</u>: The statements are corroborated by the presence of the rash and the Defendant's alleged admissions to his wife and to a third party and his confession to Detective Hurtig.

b. <u>If the child's statement identifies a perpetrator, whether that identity can be corroborated</u>: K.M.'s statements are corroborated by the presence of the rash and by Defendant's subsequent admissions and confession.

c. <u>Direct versus circumstantial evidence</u>: The rash is circumstantial; the admissions and confession are direct evidence of the crime.

5. Other Considerations.

<u>The particular facts of a case may present the court with considerations other than those outlined above that in the court's</u>

> judgment will bear on the admissibility of the proffered testimony: The Defendant was not Mirandized before either his admission to the counselor in Ohio, which was tape recorded with law enforcement assistance, or his interview by Detective Hurtig. Although neither interview was custodial, the investigative focus had certainly narrowed to the Defendant when the interviews were conducted. On the other hand, the admissions and the confession were not the result of vigorous interview technique.

¶21 After considering and balancing all these factors, the court determined that the statements K.M. made to her mother, and later to Linda Meloan, were admissible under the Rule 804(b)(5) exception to the rule against hearsay.

¶22 Were we to decide this case solely on the basis of the hearsay challenge, we might simply affirm here, and end our analysis. However, S.T.M. also challenged the admission of the child's statements in light of his Sixth Amendment right to confront his accusers. As explained below, we will no longer consider these two challenges independently. Therefore, we must consider S.T.M.'s second challenge--that the admission of the child's statements violated his rights under the Confrontation Clause--before we can decide whether the District Court erred in denying S.T.M.'s motion to suppress.

¶23 **Should the District Court have excluded K.M.'s hearsay statements as a violation of the Sixth Amendment right of confrontation?**

¶24 In his motion to exclude K.M.'s hearsay statements, S.T.M. argued both that admission of the statements would violate the rule against hearsay, and that admission of the hearsay statements would violate the Confrontation Clause of the U.S. Constitution. Despite the fact that S.T.M. raised a two-prong objection, the District Court did not acknowledge the

11

constitutional question in its conclusions of law.

¶25    In 1988, we issued our opinion in *J.C.E.*, resolving a challenge to the admission of a child's hearsay statements based on the residual exception to the hearsay rule. Notably, the appellant did not raise a Confrontation Clause challenge. Two years later, the U.S. Supreme Court decided *Idaho v. Wright* (1990), 497 U.S. 805, 110 S. Ct. 3139, 111 L.Ed.2d 638, in which it considered a Confrontation Clause challenge to the admissibility of a young child's hearsay statements in a sexual abuse case.

¶26    We briefly summarize the facts in *Wright*. Laura Wright and Robert Giles were each convicted of two counts of lewd conduct with a minor and sentenced to 20 years imprisonment for having sexual intercourse with Wright's two daughters, ages five-and-a-half and two-and-a-half. Both Giles and Wright appealed their convictions involving the younger daughter to the Idaho Supreme Court. Giles contended on appeal that the trial court erred when it admitted the hearsay statements the younger daughter made to a doctor under the state's residual hearsay exception. The Idaho Supreme Court disagreed and affirmed Giles' conviction. In her appeal, Wright asserted that the admission of the doctor's testimony under the residual hearsay exception violated her rights under the Confrontation Clause. The Idaho Supreme Court agreed and reversed Wright's conviction. The U.S. Supreme Court granted certiorari and affirmed the decision of Idaho's high court. *Wright*, 497 U.S. at 812, 110 S. Ct. at 3145, 111 L.Ed.2d at 650.

¶27    The Confrontation Clause of the Sixth Amendment, made applicable to the States through the Fourteenth Amendment, provides: "In all criminal prosecutions, the accused shall

12

enjoy the right . . . to be confronted with the witnesses against him."

¶28    While the Court in *Wright* recognized that hearsay rules and the Confrontation Clause are generally designed to protect similar values, it emphasized that the Confrontation Clause's prohibitions should not be equated with the general rule prohibiting the admission of hearsay statements.  In other words, the Court said, "The Confrontation Clause bars the admission of some evidence that would otherwise be admissible under an exception to the hearsay rule."  *Wright*, 497 U.S. at 814, 110 S. Ct. at 3146, 111 L.Ed.2d at 651.  Thus, *Wright* addresses exactly the question we must answer here: Even if K.M.'s hearsay statements were properly admissible under an exception to the hearsay rule, does their admission violate the Confrontation Clause?

¶29    The *Wright* Court explained that the Confrontation Clause restricts the range of admissible hearsay, first by requiring a showing of necessity--the prosecution must demonstrate the declarant of the hearsay is unavailable to testify.  Second, the declarant's statement is admissible "only if it bears adequate indicia of reliability."  *Wright*, 497 U.S. at 814-15, 110 S. Ct. at 3146, 111 L.Ed.2d at 651-52.  Moreover, when the hearsay statement does not fall within one of the firmly rooted exceptions to the rule against hearsay--and a residual exception is not among the firmly rooted exceptions--the indicia of reliability requirement may be met only where the hearsay statement is supported by "a showing of particularized guarantees of trustworthiness."  *Wright*, 497 U.S. at 816, 110 S. Ct. at 3147, 111 L.Ed.2d at 653.

¶30    The Supreme Court held that "'particularized guarantees of trustworthiness' must be

13

shown from the totality of the circumstances," but cautioned that the "relevant circumstances include only those that surround the making of the statement and that render the declarant particularly worthy of belief." *Wright*, 497 U.S. at 819, 110 S. Ct. at 3148, 111 L.Ed.2d at 655. Specifically, evidence at trial that corroborates the truth of the statement is not to be considered. Thus, while it has been deemed acceptable in a strict hearsay analysis to consider extrinsic corroborating evidence *(J.C.E.)*, such evidence may not be taken into account under a Confrontation Clause analysis.

¶31    Reliance upon exceptions to the hearsay rule is permissible if the declarant's truthfulness is so clear from the surrounding circumstances that the test of cross-examination would be of marginal utility. The factors often identified by state and federal courts as indicia of the reliability of statements made by child witnesses in child sexual abuse cases-- for example spontaneity, use of language unexpected of a child of similar age, and lack of motive to fabricate--all relate to whether the child declarant was particularly likely to be telling the truth when the statement was made. They do not include factors "that may be added using hindsight." *Wright*, 497 U.S. at 820, 110 S. Ct. at 3149, 111 L.Ed.2d at 655.

¶32    The Court concluded:

> In short, the use of corroborating evidence to support a hearsay statement's "particularized guarantees of trustworthiness" would permit admission of a presumptively unreliable statement by bootstrapping on the trustworthiness of other evidence at trial, a result we think at odds with the requirement that hearsay evidence admitted under the Confrontation Clause be so trustworthy that cross-examination of the declarant would be of marginal utility.

Wright, 497 U.S. at 823, 110 S. Ct. at 3150, 111 L.Ed.2d at 657.

¶33    In the years since *Wright* was decided, we have had the opportunity to reconcile it with our opinion in *J.C.E.* In *Osborne*, we noted that the Supreme Court "concluded that corroborating evidence is not a basis for presuming the declarant to be trustworthy." *Osborne*, 1999 MT 149, ¶ 22, 295 Mont. 54, ¶ 22, 982 P.2d 1045, ¶ 22. We went on to write:

> Based on the United States Supreme Court's holding in Wright and our prior language in J.C.E., we conclude that the particularized guarantees of trustworthiness necessary to satisfy the reliability requirement, both for purposes of admissibility and of the Sixth Amendment right of the accused to confront witnesses, must be drawn from the totality of the circumstances particular to the facts of the case.

*Osborne*, 1999 MT 149, ¶ 23, 295 Mont. 54, ¶ 23, 982 P.2d 1045, ¶ 23.

¶34    Given the holding in *Wright*, and our own decision in *Osborne*, it should be clear that in child sexual abuse cases, a court may not consider corroborating evidence when making a determination about the admissibility of hearsay statements under the Confrontation Clause. Because we cannot conceive of a case in which the admission of the hearsay statements of an alleged victim of child sexual abuse would not implicate the Confrontation Clause as well as the rule against hearsay, we hold that the fourth factor listed in the *J.C.E.* guidelines--the availability of corroborative evidence--should be struck from the *J.C.E.* hearsay analysis in child sex abuse cases. In other words, a court may still use the factors outlined in *J.C.E.* as a vehicle through which to assess the totality of the circumstances surrounding a hearsay statement, provided it does not include corroborative evidence in its evaluation.

15

¶35   We now turn to the instant case. First, as we mentioned above, the District Court did not address S.T.M.'s Confrontation Clause challenge to the admission of K.M.'s hearsay statements. Second, the court's decision to admit the statements under the residual exception to the hearsay rule was based in significant part on corroborating evidence. In its conclusions of law, the court said:

> As with any balancing test, it is difficult to know how much weight to give to each consideration. We have a very young child who is barely capable of communicating; she certainly resists talking to strangers, even in her mother's presence. She cannot, or could not or would not, at the time of the interview with Meloan, talk in complete sentences. According to M.M., K.M. cannot always distinguish between fact and fiction.
>
> On the other side of the coin, the statements made to M.M. and the statement made three weeks later to Meloan, are consistent and are not the type of statement that we would normally expect to hear from a 2-3 year old child. We certainly wouldn't expect a child to fabricate such a story.
>
> No doubt the biggest circumstance which provides a circumstantial guarantee of trustworthiness is S.T.M.'s alleged admissions to his wife and the counselor in Ohio and his confession to Detective Hurtig. K.M. did have a rash, and S.T.M. did admit to several people, including a detective, that he had licked his daughter's vagina. That is certainly not an admission that we would expect a person to make if it were not true. The Court concludes the presence of the rash and the Defendant's admissions to three separate people on three separate occasions outweigh any doubts about K.M.'s ability to perceive and communicate.

¶36   The District Court also took account of the corroborating evidence when it considered the attributes of K.M., the child hearsay declarant. In evaluating whether K.M. possessed sufficient mental capacity at the time of the alleged incident to receive an accurate impression of it, the court wrote: "K.M. apparently received an accurate impression of what had happened to her, as evidenced by the fact that the Defendant allegedly admitted doing

16

what K.M. reported."

¶37 It is undeniable that the District Court not only considered the corroborating evidence in this case, but indeed found it dispositive in its decision to admit K.M.'s hearsay statements. Because the Confrontation Clause prohibits the consideration of such corroborating evidence, the District Court erred, as a matter of law, in its decision-making process.

¶38 However, we will affirm the District Court's ruling if it reached the correct result for the wrong reason. *Kottel*, ¶ 8. Because we have the opportunity to conduct a *de novo* review of S.T.M.'s Confrontation Clause challenge, we are able to consider the record and make an independent evaluation as to whether admission of K.M.'s hearsay statements would violate the Confrontation Clause. We conclude that it would not.

¶39 Upon considering the totality of the circumstances surrounding K.M.'s hearsay statements, exclusive of the corroborating evidence, we conclude that her statements were supported by the particularized guarantees of trustworthiness necessary to withstand a Confrontation Clause challenge. In fact, her statements satisfied a number of the factors upon which state and federal courts have historically relied for indicia of reliability. See ¶ 31. Most notably, K.M. made the initial statement to her mother spontaneously. Her statement referenced oral-genital contact, a matter not normally within the contemplation of a toddler under three years old. Further, K.M.'s mother was reluctant to participate in the prosecution of her husband, which makes her a particularly reliable witness to relate the hearsay statement. Moreover, neither she nor K.M. had any reason to fabricate the story.

17

¶40　S.T.M. claims that the interview technique used by Meloan, and K.M.'s inconsistent responses to questions, undermine the reliability of K.M.'s statement to Meloan. While we do believe that K.M.'s statement to Meloan raises more concerns about reliability than her statement to her mother did--because, for instance, the statement to Meloan was not volunteered spontaneously, but rather, was offered in response to questioning--ultimately, we believe it meets the threshold guarantee of trustworthiness necessary for admission into evidence. Significantly, K.M.'s statement to Meloan was consistent with what she volunteered to her mother three weeks before when M.M. was changing her diaper. Meloan had no prior relationship with K.M. or any of her family members that would cast doubt on her objectivity. She had no motive to distort K.M.'s account of the incident. Moreover, Meloan's interview with K.M. was videotaped. As the District Court pointed out, the existence of the videotape strengthens the case for admission. A trier of fact would have the opportunity to watch the interview in its entirety, evaluate the interview technique, and assess the young child's ability to accurately process and convey information. Based on these factors, the trier of fact could independently determine how much weight, if any, to assign to the child's statements in that interview.

## CONCLUSION

¶41　We conclude that these circumstances, taken together, combine to meet the level of "particularized guarantees of trustworthiness" required by the *Wright* Court in a Confrontation Clause analysis. Therefore, we affirm the District Court's decision to admit K.M.'s hearsay statements into evidence.

18

/S/ PATRICIA COTTER

We Concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON
/S/ JIM REGNIER