No. 02-065

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 367

RICHARD RAUGUST,

        Petitioner and Appellant,

   v.

STATE OF MONTANA,

        Respondent and Respondent.

APPEAL FROM:    District Court of the Twentieth Judicial District,
                      In and For the County of Sanders, Cause No. DC 97-27,
                      Honorable C. B. McNeil, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Amy N. Guth, Attorney at Law, Libby, Montana

        For Respondent:

                Honorable Mike McGrath, Attorney General; Pamela F. Collins,
                Assistant General, Helena, Montana

                Robert Zimmerman, County Attorney, Thompson Falls, Montana

Submitted on Briefs:   September 5, 2002

Decided:   December 23, 2003

Filed:

_____
                    Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     Richard Raugust appeals from the order entered by the Twentieth Judicial District Court, Sanders County, dismissing his petition for postconviction relief.  We affirm.

¶2     We state the issues as follows:

¶3     1.  Did the District Court err in concluding that Raugust's petition for postconviction relief was untimely filed?

¶4     2.  Did the District Court err in dismissing Raugust's newly discovered evidence claim?

## FACTUAL AND PROCEDURAL BACKGROUND

¶5     On March 26, 1998, following a jury trial, Raugust was found guilty of deliberate homicide, a felony, in violation of § 45-5-102(1), MCA (Count I); attempted arson, a felony, in violation of  § 45-4-103, MCA, and § 45-6-103, MCA (Count II); and attempted tampering with or fabricating physical evidence, a felony, in violation of § 45-4-103, MCA, and § 45-7-207(1)(a), MCA (Count IV), arising out of his role in killing a man by discharging a shotgun at point blank range and thereafter setting their mutual camp on fire. He was acquitted of Count III, tampering with or fabricating physical evidence, a felony, in violation of § 45-7-207(1)(a), MCA.  He appealed, and this Court affirmed his conviction in an opinion issued on June 1, 2000.  *See State v. Raugust*, 2000 MT 146, 300 Mont. 54, 3 P.3d 115.

¶6     On September 14, 2001, Raugust, then proceeding *pro se*, attempted to file a petition for postconviction relief and numerous other documents with the Twentieth Judicial District

Court. The Sanders County Deputy Clerk of Court refused to file two of the documents, including the petition for postconviction relief, for failure to use "correct format according to the Uniform District Court Rules." Raugust amended his petition for postconviction relief and refiled it. The clerk of court accepted filing of the petition and several other documents on September 24, 2001. Raugust's claims for postconviction relief were based upon alleged newly discovered evidence.

¶7    On October 4, 2001, the State filed with the District Court a response to Raugust's petition for postconviction relief asserting that it was not timely filed. On October 26, Raugust responded that he had timely filed his pleadings, but that the clerk of court had failed to docket them when received.

¶8    On November 6, 2001, the District Court summarily dismissed all of the proceedings as untimely filed. On November 23, 2001, Raugust appealed the District Court's order dismissing the petition for postconviction relief to this Court.

## STANDARD OF REVIEW

¶9    This Court reviews a district court's denial of a petition for postconviction relief to determine whether the district court's findings of fact are clearly erroneous and whether its conclusions of law are correct. *State v. Root*, 2003 MT 28, ¶ 7, 314 Mont. 186, ¶ 7, 64 P.3d 1035, ¶ 7. We will affirm a district court's ruling, even if the court reached the correct result for the wrong reason. *State v. S.T.M.*, 2003 MT 221, ¶ 15, 317 Mont. 159, ¶ 15, 75 P.3d 1257, ¶ 15.

3

## DISCUSSION

### Issue 1

**¶10 Did the District Court err in concluding that Raugust's petition for postconviction relief was untimely filed?**

¶11 Raugust argues the District Court erred in dismissing the petition for postconviction relief as untimely. In its November 6, 2001, Order Denying Petition for Postconviction Relief, the District Court stated:

> . . . MCA § 46-21-102 provides that a petition for post conviction relief may be filed within one year of the date the conviction becomes final.
> The Remittitur from the Montana Supreme Court affirming Defendant's conviction was filed June 21, 2000. Defendant's Petition for Post Conviction Relief was not filed until September 24, 2001 and, therefore, is not timely.

¶12 The statute of limitations for postconviction relief is set forth in § 46-21-102(1), MCA, as follows:

> (1) Except as provided in subsection (2), a petition for the relief referred to in 46-21-101 may be filed at any time within 1 year of the date that the conviction becomes final. A conviction becomes final for purposes of this chapter when:
> (a) the time for appeal to the Montana supreme court expires;
> (b) if an appeal is taken to the Montana supreme court, the time for petitioning the United States supreme court for review expires; or
> (c) if review is sought in the United States supreme court, on the date that that court issues its final order in the case.

¶13 In *State v. Abe*, 2001 MT 260, 307 Mont. 233, 37 P.3d 77, this Court explained the proper application of § 46-21-102(1), MCA, to the question of a petition's timeliness. Pursuant to the Rules of the United States Supreme Court, a petitioner has 90 days from the entry of the decision in his appeal to petition for writ of certiorari in the United States Supreme Court. *See* Rule 13, Rules of the Supreme Court of the United States; *Abe*, ¶ 7.

4

Section 46-21-102(1)(b), MCA, deems convictions to be final when the time expires for petitioning the United States Supreme Court. Thereafter, a petitioner has one year to file the petition. Section 46-21-102(1), MCA.

¶14 Thus, Raugust had 90 days from June 1, 2000, the date of the entry of the decision in his appeal, or until August 30, 2000, to petition for writ of certiorari in the United States Supreme Court, and, at that time, Raugust's conviction was deemed final. Raugust had one year thereafter to file his petition, or until August 30, 2001. Because Raugust's petition for postconviction relief was not filed until September 24, 2001, it was twenty-five days beyond the deadline. Even assuming, *arguendo,* that Raugust's attempted filing of the petition on September 14, 2001, was valid, the petition would nonetheless have been filed fifteen days beyond the deadline.

¶15 Raugust argues that the computation of his time for filing for postconviction relief should be calculated as beginning on June 19, 2000, the date of this Court's remittitur to the District Court, plus one day according to Rule 6(a), M.R.Civ.P. (which commences the calculations on the day after the issuance of an order), plus 90 days pursuant to United States Supreme Court Rule 13, plus the one-year limitation period allowed by § 46-21-102(1), MCA, plus three additional days for mailing according to Rule 6(e), M.R.Civ.P. According to these calculations, Raugust would have had until September 21, 2001, to file his petition, thus rendering his attempted filing on September 14, 2001, timely. However, this rationale is erroneous because the 90-day time period for petitioning the United States Supreme Court does not commence at the issuance of remittitur from this Court, but, rather, on the date the

decision is rendered by this Court. *See* Rule 13, Rules of the United States Supreme Court ("... a petition for writ of certiorari to review a judgment in any case . . . is timely when it is filed with the Clerk of this Court within 90 days after entry of the judgment").

¶16 Although the District Court erred by calculating the one-year limitation period from the date remittitur was issued from this Court, it nonetheless reached the correct conclusion. Because Raugust's petition was filed after August 30, 2001, it was untimely.

**Issue 2**

**¶17 Did the District Court err in dismissing Raugust's newly discovered evidence claim?**

¶18 Raugust argues that, even if untimely filed, his petition should not have been dismissed because it was based on his claim of newly discovered evidence, which extends the limitation period, pursuant to § 46-21-102(2), MCA. That section states:

> A claim that alleges the existence of newly discovered evidence that, if proved and viewed in light of the evidence as a whole would establish that the petitioner did not engage in the criminal conduct for which the petitioner was convicted, may be raised in a petition filed within 1 year of the date on which the conviction becomes final or the date on which the petitioner discovers, or reasonably should have discovered, the existence of the evidence, whichever is later.

¶19 We established in *State v. Greeno* (1959), 135 Mont. 580, 342 P.2d 1052, the factors to be considered when a district court evaluates a motion for a new trial based upon newly discovered evidence:

> (1) [t]hat the evidence must have come to the knowledge of the applicant since the trial;
> (2) that it was not through want of diligence that it was not discovered earlier;

6

(3) that it is so material that it would probably produce a different result upon another trial;

(4) that it is not cumulative merely--that is, does not speak as to facts in relation to which there was evidence at trial;

(5) that the application must be supported by the affidavit of the witness whose evidence is alleged to have been newly discovered, or its absence accounted for; and

(6) that the evidence must not be such as will only tend to impeach the character or credit of a witness.

*Greeno*, 135 Mont. at 586, 342 P.2d at 1055; *see also State v. Cline* (1996), 275 Mont. 46, 52, 909 P.2d 1171, 1175.  We have applied these factors to a claim of newly discovered evidence made in a petition for postconviction relief.  *State v. Sullivan* (1997), 285 Mont. 235, 241, 948 P.2d 215, 219.  All six of the above factors must be met.  *See Cline*, 275 Mont. at 52, 909 P.2d at 1175.

¶20     The one-year statute of limitations for postconviction relief is a "jurisdictional limit on litigation and its waiver may only be justified by a clear miscarriage of justice, one so obvious that the judgment is rendered a complete nullity."  *Petition of Gray* (1995), 274 Mont. 1, 2, 908 P.2d 1352, 1352.  The miscarriage of justice exception must be "a constitutional violation [that] has probably resulted in the conviction of one who is actually innocent."  *State v. Redcrow*, 1999 MT 95, ¶ 33, 294 Mont. 252, ¶ 33, 980 P.2d 622, ¶ 33.

¶21     Raugust offers that "the gravamen of [his] post-conviction relief claims" is newly discovered evidence of the following:  (1) the State mishandled one of the weapons found at the scene of the offense; and (2) Rory Ross, a key eyewitness to the offense, actually confessed to the offense while waiting in the County Attorney's office to testify in Raugust's trial.  Raugust also claims that his counsel was ineffective during the trial.

7

¶22 Raugust claims that the State failed to disclose that a shotgun recovered from the crime scene had been inappropriately packaged with the muzzle sticking out of the box and shipped to the State Crime Lab in that manner. He further contends that this insecure packaging destroyed the "chain of evidence" and that he may have been entitled to exclusion of the shotgun from the trial.

¶23 Raugust does not allege when the evidence about the shotgun was discovered, nor demonstrate that it was not from want of diligence that the evidence was not discovered in a timely manner. These *Greeno* factors are critical to satisfying the statute's requirement that a petition based upon newly discovered evidence be filed within one year of the date in which the evidence reasonably could have been discovered. *See* § 46-21-102(2), MCA.

¶24 Further, Raugust cannot establish that the evidence of inappropriate packaging is so material that it would probably produce a different result at the trial. Raugust was acquitted of Count III, altering or destroying a .12 gauge shotgun by fire, and thus, materiality to that charge is not an issue. Nor, for these purposes, was the condition of the shotgun highly material to the homicide charge, as Raugust himself has acknowledged. Attacking the evidence introduced at trial in his motion for new trial or judgment notwithstanding the verdict, Raugust noted the fire-damaged weapon "could not be conclusively identified as the murder weapon nor could the shotgun pellets found in the victim be positively identified as coming from the shotgun casings taken from the shotgun found in the fire." Although evidence of the weapon's use was introduced during the trial by the State, there was other substantial evidence introduced establishing Raugust's guilt, including eyewitness testimony.

8

We conclude that even if Raugust had established diligence and timely discovery of the packaging evidence, it was not "so material that it would probably produce a different result upon another trial." *Greeno*, 136 Mont. 586, 342 P.2d at 1055.

¶25   Raugust next contends that he has discovered new evidence that the State's key eyewitness, Rory Ross, confessed to the homicide while awaiting to testify in Raugust's trial. Raugust claims to have received this evidence from another trial witness, Randy Fisher, who, Raugust asserts, stated in September of 2001, three and one-half years after the trial, that Ross had confessed to the homicide to Fisher while Ross and Fisher were waiting in the County Attorney's office to testify in Raugust's trial.

¶26   Raugust provides no information regarding when he first became aware of Fisher's recollection of the alleged Ross confession, and offers nothing to demonstrate that this evidence could not have been discovered earlier through diligence.  As such, the *Greeno* factors regarding timeliness are not established.  Further, the alleged confession is directly inconsistent with the totality of evidence presented at trial.  The evidence indicated that Raugust, not Ross, was quarreling with the victim prior to the homicide.  It was Ross who, in a panic, ran to neighboring campers and screamed that Raugust had "lost it," had shot the victim, and was going to shoot "everybody."  The neighbors then saw Ross's car, driven by Raugust, leaving the camp at 60 to 70 miles per hour, and next saw the flames of the fire started in Raugust's camp–all while Ross was in the neighbors' presence.  Ross could not have committed those acts.  Witnesses gave testimony which conflicted with Raugust's alibi defense, placing him with Ross and the victim all evening and at the scene of the crime.  In

9

light of the substantial evidence of Raugust's actions introduced at trial, and the testimony from third party witnesses about Ross's innocent role, we conclude that Raugust's claim that Fisher had stated that Ross had confessed to Fisher three and one-half years earlier is not so material that it would probably produce a different result upon another trial. Therefore, Raugust has failed to demonstrate that, when analyzed according to the *Greeno* factors, his claims for relief qualify under the "newly discovered evidence" exception to the one-year statutory bar in § 46-21-102(2), MCA.

¶27 Lastly, Raugust claims that his attorney rendered ineffective assistance by failing to introduce evidence at trial regarding what he asserts is the reputation of the State's eyewitnesses for dishonesty. He further contends that his counsel failed to request and argue for a mitigated deliberate homicide instruction. However, these claims are not newly discovered evidence. Raugust was aware of these asserted deficiencies in his defense at the time of trial, and should have raised them on appeal, or if not proper for appeal, then by a timely postconviction relief petition. As we have already concluded, Raugust's petition was not timely, and, therefore, these claims are properly denied.

¶28 We affirm the decision of the District Court.

/S/ JIM RICE

We concur:

10

/S/ PATRICIA COTTER
/S/ JIM REGNIER
/S/ JAMES C. NELSON