No. 02-674

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 112

JOHN ROGER DAVIS,

        Petitioner and Appellant,

  v.

STATE OF MONTANA,

        Respondent and Respondent.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC 2000-97,
Honorable Douglas G. Harkin, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        John Roger Davis, Pro Se, Missoula, Montana

        For Respondent:

        Honorable Mike McGrath, Attorney General; Pamela P. Collins, Assistant
Attorney General, Helena, Montana

        Fred Van Valkenburg, County Attorney, Missoula, Montana

Submitted on Briefs:  April 10, 2003

Decided:  April 27, 2004

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1    Petitioner John Roger Davis (Davis) appeals the August 20, 2002, order and memorandum of the Fourth Judicial District Court, Missoula County, wherein the court denied both of Davis's petitions for postconviction relief. We affirm.

¶2    Davis presents the following issues on appeal:

¶3    1. Did the District Court err in dismissing Davis's first petition for postconviction relief on grounds it was time-barred?

¶4    2. Did the District Court err in dismissing Davis's second petition for postconviction relief on grounds of ineffective assistance of counsel?

### FACTUAL AND PROCEDURAL BACKGROUND

¶5    On February 5, 2000, in Lolo, Montana, Davis, then one month away from his eighteenth birthday, and two older teenaged boys, Wayne Hartung and Brett Sharbono, were on their way from a party to pick up more orange juice. As they were stopped in Davis's truck at a traffic light, one of three younger boys on foot walking across the street in front of Davis's truck gave the older boys the finger. The older boys chased the younger boys down and an altercation ensued. Davis, Hartung and Sharbono forced the younger boys to sit on the ties of a railroad track "so like if they tried to run they'd be easier to grab." Davis, Hartung, and Sharbono then stole what few possessions the younger boys had and proceeded to hit, punch, and knee them in the face until they bled and rolled down the railroad embankment. Hartung stated, "[w]e intimidated 'em pretty bad. Just to be tough, I guess."

2

Responding deputies took photographs of the boys' faces which had split lips, broken noses, and extensive bruising.

¶6      On February 25, 2000, Davis was charged in District Court by Information with aggravated kidnapping, a felony, in violation of § 45-5-303, MCA, punishable by ten years in the Montana State Prison (MSP) and/or $50,000.00 fine.  In a hearing on March 13, 2000, counsel for the State argued that the case should remain in District Court; Davis's counsel argued it should be transferred to Youth Court.  The District Court found that, since Davis had turned eighteen on March 3, 2000, and aggravated kidnapping was a serious offense if convicted, the case would remain in District Court and would not be transferred to Youth Court.  Davis entered a plea of not guilty to the charge alleged in the Information.

¶7      On July 5, 2000, Davis made a motion to withdraw his plea of not guilty and, after extensive inquiry, the court and the State accepted Davis's guilty plea to the charge of aggravated kidnapping.

¶8      The District Court pronounced oral judgment on Davis on November 13, 2000.  After reviewing his Pre-Sentence Investigation Report (PSI), the District Court ordered that imposition of sentence be deferred for a period of three years, upon standard and special terms and conditions including, *inter alia*, neither using nor possessing alcohol, successfully completing an anger management program, and remaining law abiding in all respects.  The November 13, 2000, oral judgment was reduced to writing and filed on January 12, 2001.

¶9      Approximately three months after entry of Davis's deferred imposition of sentence, the State, on April 27, 2001, filed a petition to revoke Davis's deferred sentence, followed

by a supplemental petition to revoke on July 20, 2001. These petitions alleged Davis had violated several conditions of his deferred sentence, namely, drinking intoxicants, possessing alcoholic beverages, failing to complete anger management counseling, and, on June 4, 2001, pleading guilty in Mineral County to negligent endangerment in violation of § 45-5-208, MCA.

¶10 On July 31, 2001, Davis, accompanied by defense counsel, appeared in District Court and admitted to the allegations set forth in the petitions to revoke. At the same time, the District Court granted a motion by Davis to be screened for the Treasure State Correctional Training Program (boot camp). On September 20, 2001, the District Court issued an order revoking Davis's deferred sentence and imposing a new sentence which committed Davis to the Department of Corrections for a term of five years for "suitable placement," including an appropriate community-based program, facility, or a State correctional institution. The District Court further recommended placement in boot camp, after Davis served the amount of time required by MSP. The court stated Davis could petition for an early release upon successful completion of the boot camp. Davis attended boot camp for a time, but did not successfully complete the program because of a back injury he sustained in 1998. Thereafter, he was placed in the Crossroads Correctional Center in Shelby, Montana.

¶11 On May 28, 2002, Davis filed his first petition seeking postconviction relief from the oral judgment entered November 13, 2000. Then, on July 5, 2002, Davis filed his second petition seeking postconviction relief from the revocation judgment entered August 28, 2001.

4

On August 20, 2002, in consolidated proceedings, the District Court denied both petitions for postconviction relief.

## ISSUE 1

***¶12 Did the District Court err in dismissing Davis's first petition for postconviction relief on grounds it was time-barred?***

## STANDARD OF REVIEW

¶13 This Court reviews a district court's denial of a petition for postconviction relief to determine whether the district court's findings of fact are clearly erroneous and whether its conclusions of law are correct. *State v. Root*, 2003 MT 28, ¶ 7, 314 Mont. 186, ¶ 7, 64 P.3d 1035, ¶ 7. We will affirm a district court's ruling, even if the court reached the correct result for the wrong reason. *Raugust v. State*, 2003 MT 367, ¶ 9, 319 Mont. 97, ¶ 9, 82 P.3d 890, ¶ 9.

## DISCUSSION

¶14 Davis asserts the District Court erred in dismissing his first petition for postconviction relief on the basis it was time-barred. The statute of limitations for postconviction relief is set forth in § 46-21-102(1), MCA, as follows:

> **46-21-102. When petition may be filed.** (1) Except as provided in subsection (2), a petition for the relief referred to in 46-21-101 may be filed at anytime within 1 year of the date that the conviction becomes final. A conviction becomes final for purposes of this chapter when:
> (a) the time for appeal to the Montana supreme court expires;
> (b) if an appeal is taken to the Montana supreme court, the time for petitioning the United States supreme court for review expires; or
> (c) if review is sought in the United States supreme court, on the date that that court issues its final order in the case.

5

This Court has previously explained the correct procedure for applying § 46-21-102(1), MCA, to the question of whether a petition for postconviction relief is timely filed. *Root*, ¶ 9; *State v. Abe*, 2001 MT 260, ¶ 7, 307 Mont. 233, ¶ 7, 37 P.3d 77, ¶ 7. First, under subpart (1)(a), pursuant to Rule 5, M.R.App.P., in criminal cases, an appeal from a judgment must be taken within sixty days after entry of judgment appealed from. Then, under subpart (1)(b), pursuant to the Rules of the United States Supreme Court, a petitioner has 90 days from the entry of the decision in his appeal to the Montana Supreme Court in which to petition for writ of certiorari in the United States Supreme Court. *See* Rule 13, Rules of the Supreme Court of the United States; *Abe*, ¶ 7. Then, under subpart (1)(c), convictions are deemed final when the time expires for petitioning the United States Supreme Court. Finally, under subsection (1), the petitioner has a one-year limitation period thereafter to file the petition.

¶15    In the instant case, the judgment was filed on January 12, 2001. Davis did not appeal that judgment to the Montana Supreme Court. Therefore, under § 46-21-102(1)(a), MCA, the conviction became final sixty days after January 12, 2001, or March 13, 2001. Davis then had one year from March 13, 2001, to March 13, 2002, to file his petition for postconviction relief. Davis filed his petition on May 28, 2002, which was seventy-six days beyond the deadline. Although the District Court erred by calculating the one-year limitation period from January 13, 2001, to January 13, 2002, it nonetheless reached the correct conclusion. Because Davis's petition was filed after March 13, 2002, it was untimely.

6

¶16 It must be noted that Davis's assertion that his deferred sentence does not constitute a conviction, and therefore, the time bar in § 46-21-102, MCA, does not apply, is without merit. The District Court properly rejected this assertion, stating that under this Court's decision in *State v. Rice* (1996), 275 Mont. 81, 84, 910 P.2d 245, 246, a "sentence" is a judicial disposition of a criminal proceeding by plea, verdict, or finding of guilty. *See* § 46-1-202(24), MCA. Thus, a deferred imposition of sentence, as in Davis's case, is final for purposes of appeal and postconviction relief.

¶17 Davis also asserts that the District Court lacked subject matter jurisdiction over his original criminal proceeding. The issue of a court's subject matter jurisdiction may be presented at any time and is never waived or consented to where there is no basis for the court to exercise jurisdiction. *See State v. Boucher*, 2002 MT 114, ¶ 12, 309 Mont. 514, ¶ 12, 48 P.3d 21, ¶ 12. Davis alleges that the District Court lacked subject matter jurisdiction because the case was not properly transferred from Youth Court to District Court under § 41-5-206 and § 41-5-208, MCA. A review of the record, however, reveals that the filing of the Information in District Court was proper.

¶18 The county attorney properly filed the Information in District Court pursuant to § 41-5-206(2), MCA, which provides: "The county attorney shall file with the district court a petition for leave to file an information in the district court if the youth was 17 years of age at the time the youth committed an offense listed under subsection (1)."[1] And, § 41-5-206(4), MCA, further states, "[t]he filing of an information in district court terminates the

---

[1] Section 41-5-206(1)(b)(vii), MCA, states: "aggravated kidnapping as defined in 45-5-303."

7

jurisdiction of the youth court over the youth with respect to the acts alleged in the information." Since Davis was seventeen years of age at the time of the offense, and since the act of filing the Information in District Court terminated the jurisdiction of Youth Court, no error was committed with respect to the District Court's application of § 41-5-206 and § 41-5-208, MCA.

**Issue 2**

***¶19    Did the District Court err in dismissing Davis's second petition for postconviction relief on grounds of ineffective assistance of counsel?***

**STANDARD OF REVIEW**

¶20    In considering ineffective assistance of counsel claims in postconviction proceedings, we apply the two-pronged test set forth by the United States Supreme Court in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *Dawson v. State*, 2000 MT 219, ¶ 20, 301 Mont. 135, ¶ 20, 10 P.3d 49, ¶ 20;  *State v. St. John,* 2001 MT 1, ¶ 37, 304 Mont. 47, ¶ 37, 15 P.3d 970, ¶ 37 (overruled on other grounds).  Under the first prong, the defendant bears the burden of showing that counsel's performance was deficient or fell below an objective standard of reasonableness. *St. John,* ¶ 37. In so doing, the defendant must overcome a strong presumption that counsel's defense strategies and trial tactics fall within a wide range of reasonable and sound professional decisions.  *Strickland,* 466 U.S. at 688-89, 104 S.Ct. at 2064-65, 80 L.Ed.2d at 693; *State v. Harris,* 2001 MT 231, ¶ 18, 306 Mont. 525, ¶ 18, 36 P.3d 372, ¶ 18. The second prong requires the defendant to establish prejudice by demonstrating that there was a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.  *Harris,* ¶ 19.  A defendant

8

claiming ineffective assistance of counsel must ground his or her proof on facts within the record and not on conclusory allegations. *St. John*, ¶ 38.

**DISCUSSION**

¶21 In his second petition for postconviction relief, Davis asserts ineffective assistance of counsel because his attorney allegedly told him "not to tell the [c]ourt about a compression fracture that he had in his back which would preclude him from doing any sit-ups or push-ups, as required in the boot camp," and would, therefore, disqualify him for boot camp. The District Court, however, noted significant discrepancies in Davis's allegations and the affidavit of Davis's counsel who denied advising Davis to withhold any medical information in anticipation of his screening for boot camp at his sentencing or any other time.

¶22 The District Court, in its August 20, 2002, order denying Davis's petition, noted that the court file reflected information in the PSI report that was inconsistent with Davis's allegations that he withheld medical information *based upon the advice of counsel*. Specifically, in a telephone interview with Davis conducted by a State Probation and Parole Officer, Davis completed a general health screening wherein the following question was asked and answered:

> Q: Is there any physical or emotional condition, which you believe requires accommodation, e.g. lifting restrictions, activity restrictions, and assistance in ambulating, etc.? Has reasonable accommodation been made in the past? If it has, please explain. Is there anything that would limit your ability to participate fully in any correctional setting, i.e. Pre-release, boot camp, MSP, etc.

> A: No - crushed vertebrae, February 1998. Always pain.

9

Thus, Davis, himself, disclosed that, as of February 1998, he had a crushed vertebra which resulted in constant pain, but that the condition would not limit his ability to participate fully in any correctional setting, including boot camp. The court stated that, even assuming, *arguendo*, that Davis's counsel did advise him to remain silent about his back problem, Davis had already revealed the information of his own accord. The information was available to the court, and the court was, in fact, aware of Davis's back problem when it pronounced sentence on the revocation of the prior deferred sentence. The court concluded, therefore, that Davis could not show that the alleged deficient performance of his counsel prejudiced him.

¶23 We agree that Davis has not carried his burden of proving his claim for ineffective assistance of counsel. First, Davis has not grounded his proof on facts within the record rather than on conclusory allegations. Davis baldly stated in his petition that his inability to complete the boot camp program "has led to numerous detrimental consequences. He has been denied for every possible DOC placement he is eligible for. He has been denied parole because this has been a condition adopted by the parole board." As the State correctly notes, Davis has failed to provide any evidence in support of these assertions, as required under *St. John*.

¶24 Furthermore, Davis has not met the second prong of the *Strickland* test which requires a reasonable probability that, but for counsel's deficient performance, Davis would not have pled guilty and would have insisted on going to trial. *Harris,* ¶ 19. Davis has failed to establish that he would not have pled guilty to the violation of his deferred sentence, and

10

would have insisted on going to trial, but for his counsel's alleged advice not to disclose his back injury.

¶25    Thus, we conclude the District Court properly denied both of Davis's petitions for postconviction relief.  Affirmed.


                                                        /S/ JIM RICE

We concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ PATRICIA O. COTTER
/S/ JIM REGNIER