No. 04-167

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 151

EUGENE FORD,

        Petitioner and Appellant,

   v.

STATE OF MONTANA,

        Respondent and Respondent.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and for the County of Cascade, Cause No. ADC 99-102
The Honorable Thomas M. McKittrick, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

        Antonia P. Marra, Bell & Marra, Great Falls, Montana

        For Respondent:

        Honorable Mike McGrath, Montana Attorney General, Mark W. Mattioli,
Assistant Attorney General, Helena, Montana; Brant S. Light, Cascade
County Attorney, Great Falls, Montana

Submitted on Briefs:  February 2, 2005

Decided:  June 14, 2005

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1     Eugene Ford (Ford) appeals the ruling of the Eighth Judicial District Court, Cascade County, denying his petition for postconviction relief.  We affirm.  The issue on appeal is whether the District Court properly denied Ford's petition without holding an evidentiary hearing.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2     On March 26, 1999, the State filed an information charging Ford with the offense of deliberate homicide in relation to the death of his roommate, Michael Paul (Paul).  Paul was so severely beaten that his dentures were lodged deep in his throat and had to be removed with forceps.  On November 12, 1999, a unanimous jury found Ford guilty.  He was then sentenced to the Montana State Prison for life and was declared ineligible for parole.

¶3     This Court affirmed Ford's conviction in *State v. Ford*, 2001 MT 230, 306 Mont. 517, 39 P.3d 108.  Thereafter, Ford filed a *pro se* petition for postconviction relief, along with a supporting memorandum which was written by his postconviction counsel.  Concurrently, Ford's counsel moved for leave to withdraw as counsel of record, stating that she could find no non-frivolous issue to support Ford's petition for postconviction relief.

¶4     In his petition, Ford claimed that he had received ineffective assistance of counsel during his trial.  In support of this claim, Ford identified a variety of alleged deficiencies in his trial counsel's performance.  Upon these contentions, Ford requested an evidentiary hearing and asked the District Court to grant him a new trial and appoint new counsel.  The District Court denied Ford's petition in its entirety, and Ford filed a notice of appeal.

2

¶5     This Court permitted Ford's postconviction counsel to withdraw as counsel of record, and remanded the matter to the District Court for the limited purpose of appointing new counsel. The District Court appointed appellate counsel for Ford, and this appeal followed. Ford now argues that the District Court erred when it denied his petition for postconviction relief without conducting an evidentiary hearing. In support of this argument, Ford asserts that an evidentiary hearing is necessary to ascertain the extent of his counsel's deficient performance and the resulting prejudice, as that can not be determined from the record alone. Upon these contentions, Ford asks this Court to reverse the District Court and order that an evidentiary hearing be held.

## STANDARD OF REVIEW

¶6     We review a district court's denial of a petition for postconviction relief to determine whether the court's findings of fact are clearly erroneous and whether its conclusions of law are correct. *State v. Harris*, 2001 MT 231, ¶ 9, 306 Mont. 525, ¶ 9, 36 P.3d 372, ¶ 9. The decision to hold an evidentiary hearing in a postconviction relief proceeding is discretionary and is reviewed for abuse of discretion. *Harris*, ¶ 9.

## DISCUSSION

¶7     The right to effective assistance of counsel is guaranteed by the Sixth Amendment to the United States Constitution, and by Article II, Section 24 of the Montana Constitution. *State v. Kougl*, 2004 MT 243, ¶ 11, 323 Mont. 6, ¶ 11, 97 P.3d 1095, ¶ 11. In considering ineffective assistance of counsel claims in postconviction proceedings, Montana courts apply the two-pronged test set forth by the United States Supreme Court in *Strickland v.*

3

*Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. *State v. Boucher*, 1999 MT 102, ¶ 18, 294 Mont. 296, ¶ 18, 980 P.2d 1058, ¶ 18. Under that test, the petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Boucher*, ¶ 18. Where a claim of ineffective assistance is predicated on a failure to object at trial, the petitioner must show that the objection would have been proper and would have been sustained. *State v. Jenkins*, 2001 MT 79, ¶ 11, 305 Mont. 95, ¶ 11, 23 P.3d 201, ¶ 11. A petitioner claiming ineffective assistance of counsel must ground his or her proof on facts within the record and not on conclusory allegations. *Davis v. State*, 2004 MT 112, ¶ 20, 321 Mont. 118, ¶ 20, 88 P.3d 1285, ¶ 20.

¶8 Section 46-21-104(1)(c), MCA, requires that a petition for postconviction relief "identify all facts supporting the grounds for relief set forth in the petition and have attached affidavits, records, or other evidence establishing the existence of those facts." Mere allegations do not constitute the "evidence" contemplated by this statute, and unsupported allegations are not sufficient to entitle a petitioner to an evidentiary hearing. *State v. Finley*, 2002 MT 288, ¶ 9, 312 Mont. 493, ¶ 9, 59 P.3d 1132, ¶ 9. Further, we have held that this statute requires that a claim of ineffective assistance of counsel must be grounded on facts in the record and not merely on conclusory allegations. *Finley*, ¶ 9.

1. **Failure to timely object to the State's use of peremptory challenges.**

¶9 During the jury selection process preceding Ford's trial, the prosecutor used each of the State's six peremptory challenges to exclude women from the jury panel. The final jury, comprised of eight men, four women and one women alternate, was then sworn, and the

venire was dismissed with the thanks of the court. Subsequently, Ford's counsel moved for a new jury pool, claiming the State had violated Ford's right to a jury of his peers when it removed the six women. The prosecutor denied any discriminatory intent and provided gender neutral explanations for five of the six peremptory challenges before the District Court overruled Ford's objection.

¶10    Following his conviction, Ford appealed to this Court arguing that the State had improperly used its peremptory challenges and had thereby violated his equal protection rights. *Ford*, ¶ 2. In advancing this argument, Ford relied on *J.E.B. v. Alabama* (1994), 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89, which established the prohibition against gender discrimination in jury selection. *Ford*, ¶ 20. We concluded that Ford's objection to the State's use of its peremptory challenges was untimely because it was not raised until after the jury was impaneled and sworn and the venire was dismissed. *Ford*, ¶ 28. Thus, we deemed the objection waived, declined to address the merits of Ford's claim, and affirmed the District Court. *Ford*, ¶¶ 28-29.

¶11    In his petition for postconviction relief, Ford claimed that his trial counsel had rendered ineffective assistance when he failed to raise a timely objection to the State's use of its peremptory challenges. Ford based this claim on his allegation that the prosecutor had discriminated based on gender in exercising peremptory challenges. Further, Ford claimed that he was prejudiced by his counsel's failure because it prevented him from making a valid argument on appeal. The District Court concluded that the basis for Ford's claim was clearly contained within the trial record and could have been raised on direct appeal. Hence, the

5

court concluded that Ford's claim was procedurally barred under § 46-21-105(2), MCA, and refused to grant relief.

¶12 On appeal, Ford concedes that this claim could have been raised on direct appeal. However, Ford argues that he should not be precluded from raising this claim in postconviction proceedings because the failure to raise the claim on direct appeal was a result of his appellate counsel's ineffective assistance. We will not address this argument because it was not raised in Ford's petition for postconviction relief. As we have repeatedly held, we will not address issues raised for the first time on appeal. *Griffin v. State*, 2003 MT 267, ¶ 15, 317 Mont. 457, ¶ 15, 77 P.3d 545, ¶ 15.

¶13 Additionally, Ford argues that his petition should not have been denied because "the district court had, at its fingertips, a showing of ineffective assistance of counsel . . . ." In support of this contention, Ford asserts that this Court's resolution of his direct appeal established that his trial counsel rendered deficient performance. Ford has misconstrued our decision. While we did determine that Ford's trial counsel had objected in an untimely fashion to the State's use of its peremptory challenges, we explicitly declined to address the merits of that objection. *Ford*, ¶ 28. As such, our resolution of Ford's direct appeal does not establish that his trial counsel rendered deficient performance.

¶14 Section 46-21-105(2), MCA, provides that when a petitioner has been afforded the opportunity for a direct appeal of his or her conviction, grounds for relief that were or could reasonably have been raised on direct appeal may not be raised, considered, or decided in postconviction proceedings. We have consistently applied this statutory bar in order to

prevent the abuse of postconviction relief by criminal defendants who would substitute those proceedings for direct appeal. *Basto v. State*, 2004 MT 257, ¶ 15, 323 Mont. 80, ¶ 15, 97 P.3d 1113, ¶ 15. In doing so, we have stated that "where ineffective assistance of counsel claims are based on facts of record in the underlying case, they must be raised in the direct appeal and, conversely, where the allegations of ineffective assistance of counsel cannot be documented from the record in the underlying case, those claims must be raised by petition for post-conviction relief." *State v. White*, 2001 MT 149, ¶ 12, 306 Mont. 58, ¶ 12, 30 P.3d 340, ¶ 12. The underlying principle of this rule is that a silent record cannot rebut the strong presumption, under this Court's *Strickland*-based analysis, that counsel's conduct falls within the wide range of reasonable professional assistance. *White*, ¶ 13.

¶15 Generally, the trial court record must adequately document why counsel acted in a particular manner in order for this Court to review a claim of ineffective assistance and determine whether counsel's action falls below the reasonable standard for professional conduct. *State v. Jefferson*, 2003 MT 90, ¶ 49, 315 Mont. 146, ¶ 49, 69 P.3d 641, ¶ 49. However, where trial counsel's challenged conduct can not be considered a trial strategy or tactical decision, it is appropriate for review on direct appeal even if the record does not disclose the reason for such conduct. *Jefferson*, ¶ 50.

¶16 For example, in *Jefferson* we reviewed a claim of ineffective assistance on direct appeal even though the record did not disclose the reasons for trial counsel's challenged conduct. *Jefferson*, ¶ 50. The defendant, Jefferson, entered a not guilty plea to the charge of attempted deliberate homicide. *Jefferson*, ¶ 10. Subsequently, he entered into a plea

7

agreement whereby he agreed to plead guilty to one count of felony assault, and the State agreed to drop the charge of attempted deliberate homicide. *Jefferson*, ¶ 12. Jefferson later withdrew his guilty plea on the felony assault charge and proceeded to trial on the charge of attempted deliberate homicide. *Jefferson*, ¶¶ 13-14. At trial, defense counsel admitted in both his opening statement and closing argument that Jefferson was guilty of felony assault. *Jefferson*, ¶¶ 45-46. Jefferson appealed to this Court claiming, *inter alia*, that he had received ineffective assistance of counsel. *Jefferson,* ¶ 41. We determined that counsel's remarks had the effect of entering a plea for Jefferson without his consent. *Jefferson*, ¶ 50. Further, we held that because there was no plausible justification for counsel's conduct under the circumstances, the admission of guilt could not be considered a trial strategy or tactical decision. *Jefferson*, ¶ 50. As such, we deemed Jefferson's ineffective assistance claim appropriate for review on direct appeal, even though the record did not document why counsel had made the admission. *Jefferson*, ¶ 50.

¶17 Here, trial counsel's failure to raise a timely objection to what he perceived as discriminatory use of the State's peremptory challenges, can not be considered a trial strategy or tactical decision. Ford explicitly concedes this in his appellate brief. Of course, we make no determination here regarding the merits of such an objection. However, to the extent that such an objection would have been meritorious, the failure to raise it in a timely fashion could only prejudice Ford. Because there can be no plausible justification for such a failure, there is no need to hold an evidentiary hearing to determine the reason for counsel's omission. As such, we could have reviewed the merits of Ford's claim on direct appeal even

though the trial record does not document why counsel failed to object earlier. Such review could have been conducted, as it was in *Jefferson*, without consideration of factual matters outside the trial record. Consequently, we hold that under § 46-21-105(2), MCA, Ford was procedurally barred from bringing this claim in postconviction relief proceedings because he could reasonably have done so on direct appeal. Thus, we conclude that the District Court correctly denied relief on this claim.

**2. Failure to move to suppress Ford's statements.**

¶18 In his petition for postconviction relief, Ford alleged that the responding law enforcement officers elicited statements from him before issuing a *Miranda* warning. Pursuant to this allegation, Ford claimed that his trial counsel rendered ineffective assistance when he failed to move to suppress these statements. Ford also claimed that his trial counsel rendered ineffective assistance when he failed to interview a civilian witness, who accompanied one of the officers as a ride-along on the night of the incident, regarding this alleged improper questioning.

¶19 One of the responding officers testified that at the scene of the crime Ford was repeatedly and spontaneously exclaiming that he had killed Paul, at one point stating "I killed him. I broke his neck. I killed him." In addressing Ford's allegation, the District Court stated:

> The evidence presented at trial was that the officers did not question Ford, while at the scene of the crime, and that any statements made by Ford to either Officer Ramsay or Officer Sorenson were not in response to questioning by the officers.

Further, the District Court concluded that, in these circumstances, the officers were not required to advise Ford of his *Miranda* rights. Finally, the District Court found that Ford offered no evidence to establish that his counsel was ineffective for not filing a motion to suppress these statements. Accordingly, the District Court refused to grant relief on this claim.

¶20 On appeal, Ford presents several contentions that were not raised in his petition for postconviction relief. Ford contends that: (1) some of the officers who claimed to be present when certain alleged statements were made, were not present; (2) law enforcement officers threatened and coerced Ford in the course of his statements; (3) Ford's taped statement was made under circumstances which would allow for suppression; and (4) if there were witnesses who observed the officers coercing Ford into making statements, the District Court could determine that trial counsel was ineffective in failing to speak with these witnesses. We have repeatedly held that we will not address issues raised for the first time on appeal. *Griffin*, ¶ 15. Thus, because none of these contentions were raised previously, we will not address them here.

¶21 Ford also suggests that many problems could have resulted from trial counsel's failure to interview the civilian, who was accompanying the responding officers, regarding the alleged improper questioning. However, he does not make any argument or point to any evidence which would indicate that any such problems occurred in his trial. We conclude that the District Court properly denied relief on this claim, as it is without merit. The claim is grounded on nothing more than Ford's allegation that law enforcement officers elicited

statements from him before issuing a *Miranda* warning. As such, Ford has failed to comply with § 46-21-104(1)(c), MCA, which requires that postconviction claims be grounded on facts in the record. *Finley*, ¶ 9.

### 3. Failure to move to suppress witness testimony.

¶22 In his petition for postconviction relief, Ford alleged that law enforcement officers had coerced statements from his neighbors and "threatened them with evidence to link them to the crime." Upon this allegation, Ford claimed that his counsel was ineffective when he failed to move to suppress the testimony of these neighbors regarding the incident. Ford also argued that his counsel was ineffective when he failed to interview these witnesses regarding this alleged coercion. The District Court found, upon the testimony and cross-examination of these individuals, that there was no indication they had been coerced by law enforcement officers. Further, the court found that Ford had produced no evidence to support his allegation. Accordingly, the court refused to grant relief on this claim.

¶23 On appeal, Ford suggests that many problems could have resulted from trial counsel's failure to interview the neighbors regarding this alleged coercion. However, Ford does not make any argument or point to any evidence which would indicate that any such problems occurred in his trial. We conclude that the District Court properly denied relief on this claim, as it is without merit. The claim is grounded on nothing more than Ford's allegation that law enforcement officers coerced statements from his neighbors. As such, Ford has failed to comply with § 46-21-104(1)(c), MCA, which requires that postconviction claims be grounded on facts in the record. *Finley*, ¶ 9.

11

**4.      Failure to move to suppress illegally obtained blood evidence.**

¶24      In his petition for postconviction relief, Ford alleged that detectives collected a blood sample from his hands before obtaining a search warrant. Upon this allegation, Ford claimed that his counsel provided ineffective assistance when he failed to file a motion to suppress such evidence. In denying relief on this claim, the District Court noted that the State did not admit any blood evidence at trial, and thus Ford's trial counsel had no reason to file a motion to suppress such evidence. On appeal, Ford claims that he is entitled to an evidentiary hearing on this issue, but fails to present any argument in support of this claim. We conclude that the District Court properly denied relief on this claim, as it is grounded on an allegation that is directly refuted by the trial record. Thus, Ford has failed to comply with § 46-21-104(1)(c), MCA, which requires that postconviction claims be grounded on facts in the record. *Finley*, ¶ 9.

**5.      Instigation of negative publicity.**

¶25      In his petition for postconviction relief, Ford claimed that his counsel was "ineffective in his handling of the media." This claim stems from the fact that one of Paul's relatives visited Ford during his incarceration at the Cascade County Detention Center, causing a disruption and cursing at Ford. Ford's counsel issued a news release regarding the incident. Consequently, the Great Falls Tribune ran a story containing counsel's accusation that law enforcement officials had violated Ford's constitutional rights by allowing the incident to occur. Hence, Ford argued that his counsel instigated negative media coverage which reduced his chances of obtaining an impartial jury. Ford claimed that he was prejudiced by

12

his counsel's conduct because of the impossibility of proving the extent to which the media coverage turned the community against Ford.

¶26 The District Court concluded that the issue of pre-trial publicity was adequately dealt with during voir dire, as all of the jurors indicated that they were unaware of the media coverage at issue. Further, the District Court found that Ford had not supported his allegation of prejudice with any evidence. Accordingly, the District Court refused to grant relief on this claim. On appeal, Ford asserts that he is entitled to an evidentiary hearing on this issue, but fails to present any argument in support of this claim. Further, Ford has presented no evidence to support his allegation of prejudice. Finally, Ford has cited no authority in support of the claim that his counsel's complaint to the media amounts to ineffective assistance. Section 46-21-104(2), MCA, requires that a petition for postconviction relief be supported by legal authority. Thus, we conclude that the District Court properly denied relief on this claim.

¶27 Incidentally, we observe that Ford has misrepresented the trial record in advancing this claim on appeal. In an apparent attempt to fault his trial counsel's efforts, Ford asserts that after the publicity occurred, his trial counsel did not make a motion to change venue. However, the trial record demonstrates that Ford's counsel did in fact make a motion to

change venue.  The District Court apparently denied this motion,[1] and Ford did not raise the issue on direct appeal or in postconviction proceedings.

**6.      Failure to present evidence of negligent rescue efforts.**

¶28    In his petition for postconviction relief, Ford alleged that the responding law enforcement officers negligently failed to ensure that Paul's airway was clear before initiating CPR, and thus failed to detect the dentures lodged in his throat.  Further, Ford alleged that the responding emergency medical technicians (EMTs) improperly moved Paul before sufficiently stabilizing his neck, even though they knew he had neck injuries.  Upon these allegations, Ford claimed that Paul might have survived if the officers and EMTs had adequately performed their duties.  Additionally, Ford alleged that the State covered up the negligence of the officers and EMTs by forging medical records.

¶29    Pursuant to these allegations, Ford claimed that his counsel was ineffective when he failed to present evidence that Paul's death was caused by negligent rescue efforts of law enforcement officers and EMTs.  This failure, Ford argued, denied him a "potentially meritorious" defense that could have achieved an acquittal.  The District Court found that the trial record contained no factual support for Ford's allegations.  Further, the District Court found that Ford offered no evidence to support his claim that counsel should have

---

[1] The record on appeal, which does not include a trial transcript, does not document the District Court's denial of Ford's motion for change of venue.  Presumably, the motion was formally denied at some point during the proceedings without a written ruling, as venue was never changed in this case.

14

presented such a defense. Accordingly, the District Court refused to grant relief on this claim.

¶30     On appeal, Ford advances the following arguments: (1) the medical reports indicate that Paul had injuries that were possibly caused by the EMTs; (2) there could be no trial strategy which would allow counsel to ignore the possibility that the death was caused by someone other than Ford; (3) the failure to hire experts and seek opinions to prove that the death was caused by another person could be considered ineffective assistance of counsel; (4) without holding a hearing, the District Court had no way to determine whether trial counsel sufficiently investigated the negligent rescue efforts; (5) a hearing is necessary to determine whether trial counsel hired a medical expert to determine what role the rescue efforts played in Paul's death; (6) a hearing is necessary to determine whether a medical expert would testify that the emergency medical procedures caused Paul's death; and (7) if trial counsel did not investigate the use of expert medical witnesses, Ford should be allowed to have a medical expert opine at a hearing regarding the negligent rescue efforts. These arguments avail nothing because they are based on mere allegations which are unsupported by the record. We conclude that the District Court properly denied relief on this claim, as Ford has failed to comply with § 46-21-104(1)(c), MCA, which requires that postconviction claims be grounded on facts in the record. *Finley*, ¶ 9.

**7.     Failure to adequately cross-examine a witness.**

¶31     In his petition for postconviction relief, Ford alleged that the testimony of Gene Boland (Boland) contained discrepancies. In support of this allegation, Ford claimed Boland

testified that: (1) he observed Ford sitting at the kitchen table after the incident, drinking from a whisky bottle and a can of beer; (2) he observed the color of Paul's face after the incident; and (3) he made both these observations from the front door of Ford's apartment. Upon these assertions, Ford argued that Boland could not have made these observations from the front door because of the layout of the apartment. Ford also alleged that Boland's testimony was inconsistent with the blood found on Ford's hands. In support of this allegation Ford claimed that photos taken after his arrest showed blood on his hands, but the State Crime Lab did not find any blood on the whisky bottle and beer can that Boland claimed Ford was drinking from.

¶32 Based on these allegations, Ford claimed that his trial counsel provided ineffective assistance when he failed to adequately cross-examine Boland regarding the discrepancies in his testimony. Further, Ford claimed he was prejudiced by this failure because such cross-examination would have undermined Boland's testimony. The District Court found, based on both the direct and cross-examination of Boland and the evidence at trial, that the discrepancies alleged by Ford did not exist. The District Court also found that the photos of Ford's hands did not show any blood. Accordingly, the District Court refused to grant relief on this claim.

¶33 On appeal, Ford claims that if trial counsel had properly cross-examined Boland, the entirety of his testimony would have been called into question. We conclude that the District Court properly denied relief on this claim, as it is grounded on nothing more than allegations which are not supported by the record. As such, Ford has failed to comply with

16

§ 46-21-104(1)(c), MCA, which requires that postconviction claims be grounded on facts in the record. *Finley*, ¶ 9.

**8.      Failure to object to the introduction of evidence.**

¶34      In his petition for postconviction relief, Ford claimed that his trial counsel was ineffective when he failed to object to the introduction of three pieces of evidence at trial; a whisky bottle and a beer can from Ford's apartment, and Paul's dentures. Further, Ford claimed that his trial counsel should have objected to testimony regarding this evidence. In support of this claim, Ford asserted that the chain of custody for these items was severed when the original evidence tags were misplace and new tags were created. The District Court found that the State did not place any of these items into evidence, and thus Ford's counsel had no need to object. Accordingly, the District Court refused to grant relief on this claim.

¶35      On appeal, Ford abandons all of the foregoing contentions. As such, we have no occasion to review the District Court's decision on this issue. Ford's appellate brief does, however, claim that an evidentiary hearing is necessary to demonstrate the prejudice Ford suffered after his trial counsel failed to object when the prosecution displayed evidence to the jury, but did not submit that evidence to the court or the jury. This argument is without merit because Ford has not specified which evidence he is referring to. Furthermore, we could not consider this argument even if Ford had identified any particular evidence, because no such argument was raised in his petition for postconviction relief. As we have repeatedly held, we will not address issues raised for the first time on appeal. *Griffin*, ¶ 15.

**CONCLUSION**

¶36 Based on the applicable postconviction statutes, we conclude that the District Court properly denied Ford's petition for postconviction relief without holding an evidentiary hearing.

¶37 Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY
/S/ JIM RICE
/S/ PATRICIA O. COTTER
/S/ W. WILLIAM LEAPHART
Justice Patricia O. Cotter concurs.

¶38 In *State v. Ford*, we recognized that the question of when a *Batson* challenge must be made in order to be timely, was one of first impression for this Court. *Ford*, ¶ 22. This being so, it is hardly surprising that Ford failed in his first appeal to argue that his trial counsel was ineffective for failing to timely assert his *Batson* challenge. I therefore disagree with the Court's decision to deny Ford's present ineffective assistance claim because he failed to raise it in his direct appeal. See ¶¶14, 17 above. However, the ultimate result reached by the Court is nonetheless the correct one.

¶39 The very factor that in my judgment militates against application of the procedural bar --that this was a case of first impression--also militates against the success on the merits of Ford's ineffective assistance of counsel claim. Were we to reach the merits of that claim, we would be forced to conclude that Ford's counsel could not be considered ineffective

20

under our *Strickland* jurisprudence for failing to timely object to the jury array because the issue before the Court *was* one of first impression. As we have said, the defendant must prove that counsel's performance was deficient or fell below the wide range of reasonably acceptable conduct. *Davis*, ¶ 20. It cannot be sensibly argued that an attorney who is the first in this State to appeal from the denial of a *Batson* challenge--who, in other words, had no guidance from statute or case law on the timing of such a challenge--rendered the type of deficient performance required for a *Strickland* claim to be sustained. So, while I disagree with the application of the procedural bar here, I would conclude nonetheless that, as a matter of law, Ford's ineffective assistance claim could not survive on its merits.

¶40 Therefore, I concur.

/S/ PATRICIA O. COTTER